# Nickle *against* M'Farlane.

The presumption of ouster from length of possession is one of mere fact, and falls exclusively within the province of the jury.

It was therefore error in the court below to charge the jury that they were bound to presume an ouster from a possession of nearly sixty years in the defendant, although he may have originally entered under the plaintiff.

WRIT of error to the court of common pleas of *Alleghany* county. This was an action of ejectment for four hundred and fifty acres of land, in which William Nickle, the plaintiff in error, was the plaintiff below. He claimed as one of the heirs of John Nickle deceased, and as alienee of the other heirs, by deed dated the 25th of March 1826. He gave evidence to show that the ancestor, John Nickle, had purchased two adjoining tracts of land, one of which was the tract in dispute, from a certain William Turner for 60 pounds, in the year 1773 or 1774. After the purchase he returned to his former place of residence in York county, Pennsylvania, but came back during the same year to these lands with his mother and brother William Nickle deceased, and with them for some time resided on the land. In the year 1776 or 1777, John and William made a division, of their stock on the land; and John then moved on the other tract and left William in the possession or occupancy of the tract now in dispute. Between the two tracts there was no division line run until after John Nickle's death in the year 1809, when one was run by the directions of William in presence of one of the guardians of the minor children of John. It appeared by repeated declarations of John, in presence of William, and assented to by William, that John had placed William under him on the tract in dispute, and that Wil-

liam was to have and enjoy the same during his life. Declarations by William were also given in evidence, during the lifetime of John and after his death in 1809, that he (William) had no right to the land, although contrary declarations were made by him at other times, as proved by other witnesses. It was also given in evidence that John Nickle had declared, if William would become temperate, and pay him his expenses in the purchase of the land, and other advances made by John, that William should have the land. Different acts of ownership or claim to the land by John during his life, and shortly before his death, were proved; such as directing where a clearing should be made, and forbidding and preventing the sale of timber on the land. It was proved by several witnesses that the tract was always known and esteemed in the neighbourhood to be the property of John, and that William was living upon it under John. Other witnesses testified that the one tract was called John's and the other William's, and that they were so esteemed in the neighbourhood.

The defendants were admitted to be in possession, and claimed the land by virtue of sundry conveyances from William Nickle (uncle to plaintiff) and from those claiming under him, he having executed the following deeds, to wit, one for fifty acres, dated the 23d of July 1810, to Audley M'Farlane; one for one hundred acres, dated the 22d of December 1809, to George Matthews; one for the residue of the tract, except forty acres, to William Brown, who afterwards sold one hundred acres to William M'Cormick, and eighteen or twenty acres. These purchasers entered into possession at the dates of their respective deeds, and continued the same until alienated, or until ejectment was brought. William Brown, by arrangement with the other persons in possession, procured a warrant for the land, dated the 4th of March 1816, with interest from the 1st of May 1794; and on petition to the board of property, stating his discovery that the land was first improved in 1777, and wishing to do justice to the commonwealth, requested the board to correct the error. The board thereupon, on the 1st of May 1817, directed a new warrant to issue, which was accordingly issued on the 5th of May 1817, with interest from the 1st of May 1777, on which a patent was granted on the 18th of May 1818 for three hundred and eighty-four acres one hundred and twenty-six perches, and allowance. William Nickle, from whom the defendants claim, died about the year 1813.

The following error was assigned.

The court erred in charging the jury, " that although there might be evidence of an original purchase by John Nickle and that William Nickle entered under him, yet as William and those claiming under him had a distinct possession for nearly sixty years, the jury were bound to presume an ouster of John by William, and an adverse possession of more than twenty-one years, and that the defendants were entitled to a verdict."

[Nickle v. M'Farlane.]

*A. W. Foster*, for plaintiff in error.

Whether there was an *ouster* was a matter of fact to be decided by the jury on the evidence, and not a matter of law to be determined by the court. It could not, in the present case, be presumed 'from length of time. Whether one originally entering under another, afterwards declared title in himself, is also a question of fact for the jury. Here William Nickle, under whom the defendants claim, acknowledged the title of his brother John until the death of the latter, and afterwards. There was no ouster, certainly, during the lifetime of John.

*Burke*, for defendants in error.

John and William Nickle were partners in York county. They brought out with them their joint stock, and most probably purchased from Turner in partnership. In 1780 a division of the land took place, and each moved on his own tract. It is in proof that John then said to William, who was intemperate, that he would not make a deed to him, but to his children. Declarations by John that William was the owner of the tract in dispute, were also in evidence.

PER CURIAM.—Presumptions from lapse of an undefined space of time are natural, and such as generate belief by their own unassisted tendency; in which respect they differ from presumptions arising out of the lapse of a definite period—for instance, twenty years in analogy to the statute of limitations—which are artificial and generate a legal conclusion of the fact, that endures however but till it is disproved. Those of the latter class are mediate presumptions of law and fact, to be made through the medium of a jury, who are bound to draw the conclusion legally indicated, without regard to actual conviction of its truth. Those of the former class, on the other hand, are presumptions of mere fact, and fall exclusively within the province of the jury. 2 *Stark. Ev.* 681, 684. To these belong the presumption of payment from the lapse of less than twenty years in connexion with corroborating circumstances; and also the presumption of ouster from length of possession, as evidence of which the shortest period hitherto assumed as proper to be left to a jury is thirty-eight years. Now though there was abundant evidence to presume an ouster here, yet the conclusion was not one which the jury were bound, as instructed by the court, to draw; and in this particular the direction went too far.

Judgment reversed, and a *venire de novo* awarded.