ELISHA WARFIELD *et als.*, Respondents, *v.* PETER LINDELL *et als.*, Appellants.

1. *Ejectment—Tenants in Common—Limitations.*—A party entering into possession of land under a deed which makes him a tenant in common with other parties, will be presumed to take possession for his co-tenants as well as for himself. Where an adverse possession for the time required by the statute is shown, there is no need of presuming a deed, as the adverse possession by itself alone will be evidence of an estate in fee and equivalent to an absolute title.

2. *Ejectment—Tenants in Common—Ouster—Limitations.*—By presumption of law, the possession of one tenant in common is the possession of his co-tenants; but where one co-tenant takes possession of the land, and openly and notoriously exercises acts of exclusive ownership for a series of years, as by removing the soil, quarrying and selling rock, and by such acts as amount to the destruction of the thing itself, taking all the rents and profits without account, and by other acts which exclude the idea of his claiming as co-tenant, a jury will be warranted in presuming an ouster. The notice of ouster to the co-tenants may be constructive, by such open and notorious acts of ouster, or such an assertion of a claim to the exclusive possession of the whole land, as in law will impart notice to the co-tenants of an adverse and exclusive claim of title.

*Appeal from St. Louis Land Court.*

Plaintiffs sued defendants in ejectment for lots 5, 6, 7 and 8 in Bates, Smith & Lisa's addition to St. Louis, as laid out

in 1817. The facts of the case were the same as at a former trial—30 Mo. 272. In addition to all the facts stated in that report, the following new evidence was given :

Record in partition in suit of N. A. Ware (under whom Warfield, the plaintiff, claims) against the heirs of Smith and Bates, filed July 27, 1836, in which partition Ware admits of record the sale of lots 5, 6, 7 and 8, now sued for, to have been made in the lifetime of Smith, Bates and Lisa, or as early as 1822; and the same report concerning those lots 5, 6, 7 and 8 was made on the 28th day of November, 1836, by the commissioners in said petition, of whom Peter Lindell was one.

Deeds passed between N. A. Ware and Mary Lisa, executrix of Manuel Lisa, dated the 15th June, 1841, and 11th June, 1846, confirming said partition in all respects, and stating that said confirmation was made to quiet title to Lisa's interest to said addition.

It was also shown that one Whiting built a mill on the property in suit about forty-six years ago; that Peter Lindell succeeded to this possession of Whiting sometime between 1826 and 1831; that Lindell took possession of the mill, sold off the machinery, used the mill as a warehouse, built a number of houses on the lots, quarried and dressed rock on the place, and held in person and by his tenants notorious and actual possession of the lots 5, 6, 7 and 8, from 1826 to 1831, down to the commencement of this suit. Lindell quarried rock to a large amount from 1832 to 1857, and took all the profits.

Martin Thomas, through whom plaintiff and Ware both claim all the interest the plaintiff now sets up, held the title of Lisa's vendee at the sheriff's sale to all the unsold lots in said addition from October 1, 1828, until April 16, 1831. Ware acquired the same title in 1833, and held it until his death in 1850 or 1851.

The following instructions were given for plaintiffs :

1. If Lisa, Smith and Bates, being co-tenants and owners

in fee simple of the tract of land mentioned in the sheriff's deed to Oliver N. Bostwick, read in evidence by plaintiffs, sometime in or about the year 1817, laid out said tract into an addition to St. Louis as mentioned in said deed, and said tract and said addition were well known at the time of the levy and sale by the description given in the sheriff's adver-- tisement or deed (no plat of said addition having been filed for record up to the time of the execution of said deed), and if the land in dispute is within said addition, then said deed was effectual to pass to the purchaser Bostwick all the interest of said Lisa remaining unsold therein; that the interest conveyed is in express terms restricted to that actually owned and retained by Lisa at the time of his death, without any other or more special designation of the particular lots intended to be sold, cannot operate to render the deed void for uncertainty.

2. The defendants set up as a defence, and allege against the plaintiffs' right to recover, an adverse possession of the whole of said premises described in said petition for a sufficient length of time to make the statute of limitations operate as a bar to this action.

In regard to this branch of the defence, the court instructs the jury as follows:

1. In law, Lindell's possession (either by himself or his lessees) is deemed to be also that of the plaintiffs until some notorious act of ouster or adverse possession is brought home to the knowledge or notice of the plaintiffs, or those under whom plaintiffs derive title. Merely proving that he has been in possession of the whole premises, and has received all the rents thereof, does not of itself establish an adverse possession.

2. Whether such acts of ownership amounted to an adverse possession depends on the existence of an intent on his part to oust the said plaintiffs, or those under whom the said plaintiffs claim, from the premises, and their knowledge of said acts having been done with that intent.

3. If Lindell claims the whole premises under a convey-ance or conveyances purporting to convey the whole of the interest now sued for in this action, his possession of the whole was adverse to the plaintiffs, and those under whom they derive title, from its commencement under such claim. If his claim of adverse possession is not based on such a con-veyance, but on possession and acts of ownership done by him, then he must prove that such acts were done with the intent to oust the plaintiffs, and those under whom they de-rive title from the premises, and that the acts and intent were brought home to the knowledge of said plaintiffs, or those under whom they claim title; and it is only from the time of such knowledge that said acts of ownership are to be regarded as adverse. In order, therefore, to enable the defendants to avail themselves of the statute of limitations as a bar to this action, the jury must be satisfied from the evidence that for twenty years next prior to the commence-ment of this suit said Lindell was, without interruption or intermission, in possession of the premises sued for, and that his possession during the whole of this time was adverse to the plaintiffs, and those under whom plaintiffs claim title, either because held under a conveyance purporting to con-vey the title to the whole of the interest therein now sued for in this action, or because during all that time he notori-ously, and to the knowledge of plaintiffs or those under whom plaintiffs derive title, claimed the whole adversely to and ex-clusive of them.

To the giving of which instructions the defendants ex-cepted.

The defendants asked and the court gave the following instructions:

1. If the jury find from the evidence that Peter Lindell, in person, or by his tenants, agents or employees, entered upon the premises in question in 1830 or 1831, claiming the whole of said premises as his own, to the exclusion of all other persons, and to the exclusion of and adverse to Martin

Thomas, and that Martin Thomas knew of the said possession of said Lindell claiming as aforesaid adversely to him; and if said Lindell has had and held open, notorious, continuous and adverse possession of said premises, from either of said periods, in person, or by his tenants or agents, until the commencement of this suit, claiming to own the whole of said premises in his own right, to the exclusion of all other persons, then the jury will find for the defendants.

The defendants then asked, and the court refused to give, the following instructions:

2. If the jury find from the evidence that the sheriff's sale to Bostwick was intended to sell and convey only the unsold lots in Bates, Smith & Lisa's addition; that the said Bostwick and his grantees Munson, Thomas, Ingram and Ware, or either of them, never claimed any interest in lots five, six, seven and eight, now in controversy; and if the jury further find that said Ware admitted in his petition for partition of 1836 that the said lots 5, 6, 7 and 8 had been sold by Bates, Smith & Lisa in their lifetime, and if the said Ware in his lifetime never entered upon or made any claim upon the land to the premises in question; and if the said Lindell entered upon the premises in question in 1830 or 1831, claiming the whole of said premises as his own, to the exclusion of all other persons, and has had and held open, notorious, continuous and adverse possession of said premises, from either of said years, in person or by his tenants or agents, until the commencement of this suit, claiming to own the same in his own right, and using the same for his own exclusive benefit, to the exclusion of all other persons, then the jury will find for the defendants.

3. If the jury find from the evidence that the sheriff's sale to Bostwick sold, and was intended to sell and convey, only the unsold lots of Manuel Lisa in Bates, Smith & Lisa's addition; that the said Bostwick and his grantees Munson, Thomas, Ingram and Ware, or either of them, never claimed any interest in lots 5, 6, 7 and 8, now in controver-

sy; and if the jury further find that said Ware admitted in his petition for partition of 1830 that the said lots 5, 6, 7 and 8 had been sold by Bates, Smith & Lisa in their lifetime, and if the plaintiffs have not shown by evidence to the satisfaction of the jury that either Bostwick, Munson, Thomas or his grantees, or Ingram, or Ware, in their lifetime, ever entered upon or made any claim upon the land, or of Peter Lindell, or his agents or tenants, to the premises in question; and if the jury should further find from all the facts and circumstances of this case, that either Thomas, or any other person through whom plaintiffs claim title, had knowledge of the possession of Peter Lindell prior to the first day of January, 1837, as an adverse possession to him or them; and if the jury further find that, from all the facts and circumstances in this cause, the said Lindell has held the premises in question for more than twenty years before the commencement of this suit, claiming the same as his own adversely to Ware and all other persons, then the jury will find for the defendants.

4. The sheriff's deed to Bostwick conveyed to said Bostwick only the unsold lots in Bates, Smith & Lisa's addition; and if the jury find from the evidence that the said Bostwick and his grantees Munson, Thomas, Ingram and Ware, or either of them, never claimed any interest in lots five, six, seven and eight, now in controversy, during their lives, on the ground, or of the defendant; and if the jury further find that said Ware, in July, 1836, admitted in his petition for partition that the said lots 5, 6, 7 and 8 had been sold by said Bates, Smith & Lisa in their lifetime, and if neither the said Bostwick, Thomas, Munson, Ingram or Ware ever entered upon or made any claim upon the land, or of Peter Lindell, or his agents or tenants, to the premises in question during their lives, and suffered the said Peter Lindell to use the said premises as his own for more than a quarter of a century before this suit was brought, without any claim or entry by them, or either of them, upon the land, or of the said Lindell or his tenants, then the jury is authorized to

find that the said Bostwick and his grantees have abandoned said premises; and if the jury further find that said Lindell, in person or by his agents or tenants, has had and held open, notorious, continuous and adverse possession of the premises in question for more than twenty-five years before the commencement of this suit, using and claiming the same as his own, the jury will find for the defendants.

5. If the jury find from the evidence that the defendants, and those under whom they claim, have been in the actual, open, notorious and continued possession of said lots 5, 6, 7 and 8 for a period of more than twenty-five years before this suit, claiming the same in their own right, to the exclusion of all other persons, with the knowledge of Thomas or of Ware, and that Thomas and Ware *acquiesced* in the said adverse claim of right and possession, and that Ware *admitted* in July, 1836, that the said lots 5, 6, 7 and 8 had been sold by Bates, Smith & Lisa in their lifetime, in his petition with others for the partition of the unsold portion of said Bates, Smith & Lisa's addition, and that said Ware affirmed the said partition in 1841 by his deed to Mary Lisa, then the jury is authorized, if they deem it proper under all the circumstances of this case, to presume a deed from the original proprietors, or either of them, to any person through whom the defendants claim title, or to the defendant Peter Lindell.

6. If the jury find from all the facts and circumstances in this case that the said Ware or his grantees, or either of them, knew of the possession, and that he claimed the said premises as his own at any time prior to twenty years before this suit was brought, and if said Lindell continued to hold and claim, and use and possess said premises as his own for twenty years continuously before this suit was brought, holding the same adversely to all persons, for his own exclusive use, then the plaintiffs cannot recover, and the jury will find for the defendants.

As to what is knowledge of the possession of Peter Lindell and his claim to the said premises as his own, the jury is further instructed that knowledge of the possession of Peter

Lindell by Martin Thomas, if such possession was notorious and accompanied by unequivocal acts of exclusive ownership that were known to Thomas, is sufficient for the jury to find an ouster as against Thomas; and the continuance of such possession, if open, notorious and. adverse, for more than twenty years after such knowledge of the said possession was brought home to said Thomas, will authorize the jury to find such possession adverse, and to find for the defendants, if the jury find twenty years' continuous adverse possession before suit by said Lindell.

7. The answer of Peter Lindell in the case of Lisa v. Lindell must be considered by the jury as a whole, and all the declarations of said Lindell in said answer are evidence for him as well as against him, and the jury is to judge of the weight thereof; and if the jury find from all the evidence in this case that Peter Lindell, in person or by his tenants, agents or employees, entered upon the premises in question in 1830 or 1831, claiming the whole of said premises as his own, to the exclusion of all other persons, and that said Thomas and Ware, or either of them, knew of the said possession of said Lindell, or knew or admitted that some person claimed title to said premises adversely to them or either of them as early as the first day of August, 1836; and if the said Lindell has had and held open, notorious, continuous and adverse possession of said premises from the first day of August, 1836, until the commencement of this suit, claiming to own the same in his own right, to the exclusion of all other persons, then the jury will find a verdict for the defendants.

8. If the jury find from the evidence that Ware *admitted* in July, 1836, that lots Nos. 5, 6, 7 and 8 had been sold by Bates, Smith & Lisa in their lifetime; and if the jury further find that Ware never claimed any interest in said premises of Mr. Lindell, or his tenants or agents, or of any person on the ground, and never made any entry thereon; and if the jury further find from the evidence that said Ware, during. his life, did not regard himself as the owner of said premises

or any part thereof, then the jury is instructed that if they find from the evidence that said Lindell has had and held open, notorious and continuous adverse possession of the premises in question for more than twenty-five years before this suit was brought, using the same as his own, to the exclusion of said Ware, from the first day of August, 1836, then such possession of said Lindell was and is adverse to said Ware, and the jury should find for the defendants.

9. If, at the time of the filing of the petition for partition of 1836 by Ware, Peter Lindell was in the open, notorious and actual possession of the premises in question, claiming the same as his own, and continued in such possession up to the time of the commencement of this suit, claiming the same as his own, then if the jury find from the evidence that Ware *admitted* in his said petition for partition that said lots 5, 6, 7 and 8 had been sold by Bates, Smith & Lisa in their lifetime; and if the jury further find that, from the time of said admission up to the death of Ware, said Ware never entered upon or claimed said premises on the ground, or of said Lindell, his tenants or agents, but on the contrary always acquiesced in said Lindell's possession, then the jury are instructed that said possession of Lindell under said circumstances was not for the benefit of said Ware, or any person claiming under him; and if the jury find that said Lindell has had and held open, notorious, actual and continuous possession of said premises for more than twenty years after the first day of August, 1836, and before the commencement of this suit, claiming the same as his own, then the jury will find for the defendants.

10. The jury is instructed that if they find from the evidence that Peter Lindell, in person or by his tenants, has had and held open, notorious, continuous and *exclusive* possession of the premises in question for more than twenty years before the commencement of this suit, claimimg the same as his own, such possession confers a title to said premises upon Mr. Lindell, and the plaintiffs cannot avoid the effect of the said long possession unless they have proved to the satisfac-

tion of the jury that said Lindell held the said premises as a tenant in common of said Ware, or some person through whom Ware claimed title, up to a period within twenty years before the commencement of this suit ; and if the plaintiffs have established such a holding in common by Lindell with any grantor of Ware, then if the jury find that said Lindell held possession of said premises openly, notoriously, continuously and adversely to all persons, and exercised such notorious acts of ownership over the said premises in question for more than twenty years before the commencement of this suit, claiming the same as his own, and that said acts of ownership by said Lindell were of such a character that the jury believe they were known to Thomas while he held the interest now claimed by plaintiffs, and that Thomas made no claim on the ground, or against said Lindell, for said premises, or any part thereof, and that said Lindell continued said possession open and notorious from 1830 or 1831 down to the commencement of this suit, claiming the same to the exclusion of all other persons, then the jury will find for the defendants.

11. If the jury find from the evidence that Martin Thomas had knowledge of the possession of Peter Lindell and his tenants of the premises in question from seeing or knowing of such possession, and that such possession was accompanied by such acts of ownership and claim on the part of Lindell as would signify that he claimed the whole interest in the land for himself to the exclusion of all other persons, and that these acts of possession and use by Lindell were of such a notorious and open character that they were known to Thomas at the time he held the title now claimed by plaintiffs, then the jury is authorized to find that such possession and use of the land by Lindell was an ouster and exclusion of Thomas from the possession, and the statute of limitations began to run against said Thomas, and all persons claiming under him, from said time ; and if the jury find that after such ouster Lindell has had and held for twenty consecutive years the open, notorious, continuous and adverse possession

of the premises in question for more than twenty years before the commencement of this suit, the jury will find for the defendants.

12. The jury is instructed that if they find from the evidence that Peter Lindell, in person or by his tenants, has had and held open, notorious, continuous, adverse and exclusive possession of the premises in question for more than twenty years before the commencement of this suit, claiming the same as his own, such possession confers a title to said premises upon said Lindell without any deed or title paper whatsoever, and the plaintiffs cannot avoid the effect of such long possession unless they have proved to the satisfaction of the jury that said Lindell had no other title in said premises but as a tenant in common of said Ware, or some person through whom Ware claimed title, up to a period within twenty years before the commencement of this suit; and if the jury believe from all the facts and circumstances in evidence in this case that said Lindell had any other title paper or papers than those introduced by the plaintiffs in this cause that conveyed to him or his grantors the interest from Lisa of one third, or the interest of Lisa's executors, then the jury will find for the defendants.

13. The *admission of Ware in his petition* for partition in 1836, that the lots 5, 6, 7 and 8 had been sold by Bates, Smith & Lisa in their lifetime, amounts to an admission that said Ware had no title to the premises in question, and that the said admission is legitimate evidence upon the question at issue before the jury, and so also is the admission of Peter Lindell in his answer in the case of Lisa v. Lindell, that he "would show on the trial, and against the claim of Lisa, a title in N. Ware to the premises claimed by the plaintiffs, by virtue of a sale under judgment and execution against the executors of M. Lisa," competent evidence before the jury for whatever it may be worth; but the jury, in considering the value of the admission of said Lindell against his title, is also to consider the whole answer of said Lindell in said case and the purpose for which said answer was filed; and

if the jury find from a consideration of the whole answer of said Lindell, that he asserted therein his own title to be good, and his own claim to the land to be valid and effectual against all other persons, then the jury should not find against the defendants upon said admission in said answer, if they find for the defendants upon any instruction given for the defendants.

To the refusal of the court to give the foregoing instructions the defendants then and there excepted.

*B. A. Hill*, for appellants.

I. The court below erred in refusing to give the instructions No. 2–12 concerning the right of the jury to find that a deed should be presumed in this case in favor of defendant or his grantors. The Supreme Court, in the decision of this same case, 30 Mo. 289, expressly holds that this is a question of fact for the jury; and yet it was excluded from the consideration of the jury by the court below.

II. The court below erred in striking out of the amended answer of the defendants the allegations concerning the presumption of a deed, the partition record, and deed of 1841 and 1845—Warfield v. Lindell, 30 Mo. 289.

III. The court below erred in giving the 2d instruction for plaintiffs.

The court below adheres to the vicious term of *knowledge* or *notice* being brought home to plaintiffs of defendant's possession. This is in direct conflict with the cases, and with this case as formerly decided by the Supreme Court of Missouri, in Warfield v. Lindell, 30 Mo. 273.

It now appears clear that the possession of defendant was notorious, conveying notice, by the simple acts of possession and quarrying rock, to all the world.

(*a.*) The distinction is well taken in this case by the former decision (30 Mo. 281) between acts of *possession that imply notice*, and mere claim of title without acts of possession which do not imply it.

Acts of possession notorious and public, continued for many years, or as long as the period required by the statute to bar by limitation, will be presumed in law to be adverse to the *co-tenant* without any positive notice to the co-tenant—Warfield v. Lindell, 30 Mo. 282. This is the precise case here. Whiting and Lindell and his successors have had actual possession of these lots of land for forty-six years, exercising notorious acts of ownership over the whole property continuously. In view of these facts, it was error for the court below to declare that such notorious acts of ouster, continued for so long a period, must be brought home to the knowledge or notice of the plaintiffs, or those through whom they claim title. This is the error of the first clause of plaintiffs' instruction. Such a possession and such acts of ownership, continued for such a period, are evidence of ouster and of adverse possession without further proof or evidence of notice to plaintiff's ancestor or knowledge by him of the possession, as declared in the plaintiffs' instruction.

(*b.*) The court below further erred in the second clause of plaintiffs' 2d instruction, by carrying this doctrine of notice and knowledge to the extent of declaring, that, in addition to notice and knowledge, the defendant must prove an intent on his part to oust the plaintiffs, and that plaintiff had knowledge of the acts having been done with that intent.

In such a case, and in all like cases, the true rule is to let the determination of the defendant's mind and the knowledge of that determination by plaintiff be ascertained from the acts of ouster and possession for the period fixed by the statute of limitations. This is as far as human testimony can go, unless a written or express notice of ouster be given by the party to his co-tenant.

IV. The beginning of the possession by Whiting in 1820 was not a possession in common with Smith, Bates, or Lisa. It was of these lots as lots sold by the original owners, and so marked on their plat.

It cannot be said that Whiting was in possession as a ten-
37—VOL. XXXVIII.

ant in common with Lisa after 1822, when Lisa died in 1822. No title deed appears to Whiting; his possession without deed was a disseizin of the true owners, if the lots were not sold to him so as to vest in him the title.

As Lindell succeeded Whiting in his possession, the disseizin of Whiting comes to Mr. Lindell by the simple transfer of possession—4 Kent, p. 485–6, *a.*, 540. The purchase of other titles by Lindell after his entry into Whiting's mill does not affect his claim by disseizin—Cutter v. Waddingham, 33 Mo.; Joeckel v. Easton, 9 Mo.

As Lindell succeeded Whiting in this possession, say in 1826, Lindell cannot be held to hold as a co-tenant of persons acquiring title by sheriff's sale subsequent to Whiting's entry and holding. In other words, there can be no privity of possession between the purchaser at sheriff's sale in 1828 and the previous possession. If Lisa's devisee had been in possession in 1828, the purchaser at sheriff's sale would be driven to his ejectment. So if Lindell was in possession of Bates and Smith's two thirds of the land, and of Mrs. Lisa's one third as her co-tenant, the purchaser could not claim Lindell to hold amicably as co-tenant with him. (See Crui. on Ten. in com.)

*Glover & Shepley*, for respondents.

The facts of the case are precisely similar to those appearing in the same case before the Supreme Court and reported in 30 Mo. 272, with the single exception that the partition record, which was excluded, was in this case admitted, and a little cumulative proof as to possession of Peter Lindell and others.

I. There is no pretence that the defendant Lindell ever acquired title by deed or sale of the undivided third in controversy.

II. There is no pretence since the decision in 21 Mo. 128, and in this case when it was before this court, that Bostwick and the plaintiff claiming under him did not have the legal title to the portion recovered.

III. Therefore, the only question that can arise in this case is whether the defendant has acquired any title by the statute of limitations, and that was presented to the jury in the very language approved by the Supreme Court in this very case.

The only other evidence was merely cumulative, and but little of that as to the fact of the possession of Lindell. No connection was proved between Lindell and Whiting, and the petition in partition by Ware and the heirs of Smith and Bates, and deeds of Ware, all of which only bore upon questions of fact before the jury as presented in the former case, making, as defendants thought, the fact of *adverse* possession more clear than before.

IV. Even if the instructions asked by defendants were otherwise unobjectionable, they ought not to have been given, because the court had already given instructions to the jury fully covering the whole law of the case; for, 1st. It is the duty of the court not to allow the case to be overloaded and the minds of the jury confused by superfluous instructions ; 2d. From their multiplicity, the instructions asked by the defendants could only have (what they were intended to have) the effect of misleading the jury from the true issue before them.

V. But the defendants' instructions refused are radically bad, most of them singling out portions of the evidence deemed favorable for the defendant, and ignoring other parts which tended much more strongly to sustain the right of the plaintiffs ; some of them submitting questions of law to the jury, and some of them having no facts upon which to base such instruction to the jury.

The 2d of defendants' instructions refused ought not to have been given for three reasons :

(*a.*) It submitted to the jury a matter of law when it referred to the jury what the deed intended to convey.

(*b.*) There was no evidence to sustain the instruction as to admission on Ware's petition that the lots 5, 6, 7 and 8 had been sold by Bates, Smith & Lisa.

(c.) The same thing in effect was given in the instruction of defendants given by court.

The 3d of defendants' instructions ought not to have been given for the same reasons as given above. It is substantially the same instruction in a little different language, with other objectionable features superadded, as that the said Ware and his grantees did not go upon the ground, &c.

The 4th instruction asked by defendants was properly refused; for,

(a.) It for the first time set up a doctrine of abandonment at common law.

(b.) It requires that Ware or those under whom he claims should have claimed "on the ground or of defendant," otherwise Lindell's possession is a good defence.

The 5th instruction refused asks the jury to presume a deed to Peter Lindell of the interest sued in the face of Lindell's sworn answer in the case of Lisa v. Lindell. It is besides objectionable in other features of it. It takes and groups together certain things, and then asks the court to instruct the jury if they find certain things there, "if they deem it proper under all the facts and circumstances of the case," they can presume a deed.

The 6th instruction undertakes to tell the jury what amount of evidence ought to satisfy them, designating out certain matters and altogether disregarding others.

The 7th instruction undertakes to tell the jury, that although Peter Lindell swore that the property in controversy (the one third) was outstanding in another view, yet they might disregard this, and find in the title of this that Lindell all this time was holding adversely.

The 4th, 5th, 8th, 9th and 13th are erroneous, as they instruct the jury "that the petition of Ware, Smith's heirs, and Bates' heirs, for partition, was an *admission* of Ware"; besides other objectionable features in each of them.

The 10th undertakes to shift the burden of proof by putting together certain facts and utterly ignoring others.

The 11th instruction does not proceed upon the ground that Lindell even claims to own the third in controversy; but only that the possession of Lindell was so notorious, that Thomas must have known it.

The 12th instruction asks the court to instruct the jury, that if they "believe Lindell had any other title papers than those he introduced in evidence," &c., there being no evidence whatever before them of Lindell ever having any other title papers than those he introduced in evidence.

As to the effect of the unsworn petition of Ware, the Supreme Court in Hall v. Guthrie, 10 Mo. 623, state that it is not even evidence against the party making it even in the case of a bill in chancery. So also the case of Doe ex d. Bowerman v. Lybourn, 7 Durn. & East., 1; that the facts therein stated were merely the suggestion of counsel, and this, too, in case when the matters stated were directly involved in the issue in the case.

HOLMES, Judge, delivered the opinion of the court.

The questions presented for decision arise mainly upon the instructions which were given or refused. But, as it often happens in cases like this, the determination of these depends as much, or more, upon the application of the law to the facts of the case than upon settling the principles of law, as such. It becomes necessary, therefore, in the first instance, to examine into the nature of the evidence, that we may gain a clear and definite conception of what the case made really was upon which the instructions were predicated.

The defence was made to rest, in part, upon the assumed ground of an actual entry, by the defendant, into possession of the lots in controversy, by virtue of some exclusive claim of right or title anterior in date to the deed or deeds which made him a tenant in common with those under whom the plaintiffs claim. We find no evidence in the record which can be said to have any tendency to support this position. On the contrary, the evidence clearly shows that the first possession taken by the defendant of these lots was of a date

subsequent to his deed from Smith's heirs, conveying to him an undivided interest of one-third in the property. By later deeds he acquired another one-third interest in the same, while he was himself in possession. The law presumes in such case that he entered into possession under his title, and his possession must be regarded as that of his co-tenants also —Parker v. Proprietors, &c., 3 Met. 91. It was not shown that he had any other title, nor that he owned more than the interest of two-thirds acquired by these deeds at any time during his possession. It is distinctly proven that after he had acquired the interest of Smith's heirs, he employed a surveyor to go with the plat and survey the lots, and ascertain precisely where they were, and that his actual possession commenced after the survey was made. It appears also that at the time of this purchase and taking possession there was a building on the premises, which had been used for a steam mill by a man that had failed and gone off; that there had previously been an auction sale of lots in the addition, and that these lots among others had been marked "sold" on the plat, but that they had never been paid for nor conveyed, and had reverted to the original owners; but there was no evidence whatever to show that there had been any connection between the defendant and the former owner of the mill, nor that he had acquired any title or possession from him. The necessary inference from the facts proved must be that the defendant entered into possession under his deed, and by virtue of the title thereby acquired. His possession, therefore, began as that of one tenant in common holding with others under the common title, and all question of an adverse possession of the whole property commencing anterior to this title, or independently of it, is thus removed from our consideration.

Another position of the defendant was that upon an exclusive possession of the whole property extending beyond the full period of the statute of limitations, a deed should be pre sumed. That may doubtless be done in a proper case, but there is no ground here for a presumption of that kind. The

case involves not merely an adverse possession in general, but the particular question of an actual ouster, by one tenant in common of his co-tenants. If such an adverse possession only were the subject of inquiry, and if it were established by the evidence, there would be no need of presuming a deed at all; such adverse possession would by itself alone be evidence of an estate in fee, and equivalent to an absolute title. But if this presumption of a deed conveying the whole title be insisted upon as the basis of a seizin or possession anterior to his title as a tenant in common, or of a possession taken independently of the tenancy in common, and against the legal presumption of such tenancy, we do not think it can in any manner be admitted.. There was no evidence on which this theory could be maintained.

The remaining defence rested upon the question of an actual ouster of the co-tenants, followed by an adverse possession for the whole period of the statute of limitations. The state of the evidence upon this matter was such as to present two distinct bases on which instructions might properly have been given to the jury. The first consisted in open, visible and notorious acts of exclusive ownership and actual ouster, which were in themselves of such a nature as to rebut and overcome the legal presumption of a tenancy in common, and to give notice or impart information of such actual ouster, and constitute in law competent evidence from which a jury might be warranted in finding the fact of an actual ouster more than twenty years before suit. The second basis consisted in the mere fact of an exclusive and undisturbed possession of the whole premises, taking the entire profits and paying all the taxes for a period extending beyond the statute of limitations, with the acquiescence of the co-tenants, and without any claim of possession, right or title on their part, or any demand for an account of the profits, together with all other circumstances bearing upon the conduct of the parties, and upon the character and intent of the possession, as furnishing altogether competent evidence and a basis of facts proved, in which the court would be justified

in leaving it to the jury to infer and presume an actual oust-
er, if morally convinced that such had been the fact.

Under this first head, the acts proved, which were of such
a nature as to afford direct evidence of an actual ouster,
and were therefore competent to be submitted to the jury on
that question, consisted chiefly, if not entirely, in the occu-
pation and use of the premises for the purpose of quarrying
rock. The use made of the old mill building, or the leasing
of a small part of the premises, was not inconsistent with
the presumed possession of one tenant in common on behalf
of all. But an extensive quarrying of rock during nearly
the whole period of this entire possession, digging deep holes
in the ground, and removing large masses of the soil and
rock, was an invasion of the realty itself, and amounted to
waste, for which the co-tenants might have maintained an
action of trespass against him, and therefore to acts of
actual ouster. It amounted to ouster, because it was a
destruction or taking away of the thing itself—Wilkinson
v. Haygarth, 11 Jur. 104; 2 Crui. Dig. by Greenl. 391, § 10,
n. 1. There was ample evidence that large quantities of
rock had been quarried and carried away from the premises,
amounting to thousands of dollars in value; that small
houses, or shanties, had been erected for the use of the work-
men, and that these acts were overt and notorious, and they
were unquestionably of such a character as to impart in-
formation and give notice to the co-tenants that their rights
in the premises were invaded and denied, and that a posses-
sion was claimed and a use made of the property which was
utterly inconsistent with the presumption that the defend-
ant's possession was their possession also, and consequently
that the unity of possession was dissolved. Upon such evi-
dence as this we think a jury might be well warranted in
finding that there had been an actual ouster; but it is a
matter of fact for the jury to determine.

The difference in the rule of evidence as applicable to a
case of this kind and to a case of adverse possession, a dis-
seizin in general, depends upon the presumption of law that

Warfield el als. v. Lindell et als.

the possession of one tenant in common is the possession of the co-tenants as well. The very essence of a tenancy in common consists in the unity of possession. It is the only unity required of tenants in common, and they hold by unity of possession — 2 Greenl. Crui. Dig. 390, tit. 20, § 2; 4 Kent. Com. 367. That one tenant in common may disseize another there can be no doubt; but in consequence of the legal presumption, acts of exclusive possession, which, in case of a stranger, would be deemed adverse and *per se* a disseizin, are in cases of tenancies in common susceptible of explanation consistently with the real title : they are not necessarily inconsistent with the unity of possession existing in such case. It is for this reason that it depends upon the intent with which the acts of ownership are done, and upon their notoriety and essential character, whether they will be such as to break and dissolve the unity of possession, constitute an adverse possession as against the co-tenants, and amount to a disseizin. For this purpose, there must be outward acts of exclusive ownership of an unequivocal character, overt and notorious, and of such a nature as by their own import to impart information and give notice to the co-tenants that an adverse possession and an actual disseizin are intended to be asserted against them — Prescott v. Nevers, 4 Mason, 326; Parker v. Proprietors, 3 Met. 91; Jackson v. Tibbits, 9 Cow. 241; Ricard v. Williams, 7 Wheat. 121; Lodge v. Patterson, 3 Watts, 77; Ang Lim. 464, § 14.

The other evidence had no tendency to prove direct acts of actual ouster. It consisted merely of facts and circumstances going to show negligence, inattention, remissness and failure to claim any right or title, or make any demand for an account of the profits—mere acquiescence on the one side, and a continuous and exclusive possession of the whole premises on the other—taking all the profits and paying the taxes for more than twenty-six years, and for a time beyond the full period of the statute of limitations, both as a bar to an ejectment and a bar to an action of account. Upon evidence

of this kind, it would have been entirely proper for the court to instruct the jury that they were at liberty to presume— that is, to infer—an actual ouster, if upon the whole evidence before them considered together, with the great lapse of time, they should be morally convinced and satisfied that such had been the fact. Such evidence in such case may be allowed to overcome the legal presumption in favor of a tenancy in common, and it will be deemed sufficient in law to warrant a jury in inferring and presuming an actual ouster and an adverse possession for the period of the statute bar; and the jury is not bound to find, nor should the court instruct them to find, such actual ouster; the doctrine goes no further than to leave it to the jury, not upon a legal presumption, but upon a natural presumption, passing for what it may be worth with them, and operating upon the minds as it may happen to produce an actual conviction of the fact—Bolton v. Hamilton, 2 Watts & S. 294; Law v. Patterson, 1 Watts & S. 193; 3 Watts, 165; Ang. Lim. 467, § 14; Doe v. Prosser, Cowp. 217; Hornblower v. Read, 1 East. 568; 2 Greenl. Crui. Dig. 395–7.

Much stress has been laid upon the effect of the partition record against the plaintiffs. The exclusion of this record would seem to have been at least one of the reasons why the judgment was reversed on the former occasion. It was not then said, nor do we now think that this partition, or the deeds made in confirmation of it, were evidence of any direct repudiation of all right or title in these lots; but it was said that this record was admissible in evidence as going to show remissness or negligence in not asserting any claim of right or title, and as showing facts which might form "a good ground for presuming a deed after the lapse of twenty-six years, and a continuous possession in the defendant during this period." We have already seen that the evidence produced here laid no foundation for the presumption of a deed; but we think it may be correctly said that the evidence was admissible for what it was worth, as going to show remiss-

ness in search, and negligence and failure to claim any right at that time, together with the other facts and circumstances, and the lapse of more than the full period of the statute of limitations, forming a proper ground on which it might be left to thê jury to infer and presume an actual ouster. Nor do we think it furnished any proof, either by way of an admission in the petition, or by virtue of any effect of the partition itself, that the plaintiffs had then no right or title in these premises. Only so many lots and parcels were then divided in partition as were then made the subject of partition. No fair inference could be drawn from this transaction, either that the parties repudiated any ownership in these lots, which were not then made the subject of partition, or even that they were omitted through ignorance or neglect. The most that can be said is that it was a circumstance, among others, which might properly go to the jury for what it was worth, as showing acquiescence merely.

On the other hand, the answer of the defendant in the ejectment suit of Lisa v. Lindell had no tendency to prove an admission that he held ás a tenant in common with the plaintiffs. The whole answer was to be taken together, and it distinctly placed the defence on the ground of an independent and exclusive claim of possession and ownership adverse to the title of the plaintiff therein. It merely said in one part, that as against her suit he would show that the right and title which she claimed had been conveyed by her to another person. If that would be a bar to her recovery, it would be enough for his purpose; if not, he still stood upon his claim of title and adverse possession, whatever it might be. It had no proper tendency to prove that he was not claiming an exclusive adverse possession in the premises, even as against co-tenants; nor did it amount to any positive admission of a co-tenancy. It certainly had no effect to prove or disprove any direct act of actual ouster; but the answer, like the petition of the partition, was evidence of what it contained, and the record of the proceedings may be

considered as admissible, like the partition record, for what it was worth as a part of the facts and circumstances, on which the jury might be left to infer and presume an actual ouster, or the contrary; and it might have some bearing upon the character and intent of the possession which he was then claiming.

Such being the nature of the evidence before the jury, the instructions are to be considered as predicated upon this state of the case. The principal objection to the instructions which were given for the plaintiffs points to the matter of knowledge or notice of acts of ouster. The evidence did not show that actual knowledge of any acts of ouster had been brought home to the plaintiffs or those under whom they claimed; but there was evidence tending to prove such overt and notorious acts of exclusive possession and ownership of the whole property as must, by their very nature and character, be deemed and taken in contemplation of law as amounting to an actual ouster, and as giving notice even to tenants in common, whether present or absent, of an intention to hold and assert an exclusive adverse possession against them, and, therefore, of an actual ouster. It belonged to the jury to weigh the force and determine the effect of this evidence, and to decide the question of an actual ouster in fact, involving the act, the intent, and the notice.

These instructions for the plaintiffs appear to be the same as those which were the subject of consideration when the case was here before—Warfield v. Lindell, 30 Mo. 272. The particular objection rests upon the words (in one clause) " until some notorious act of ouster or adverse possession is brought home to the knowledge or notice of the plaintiffs." And (in another clause)—" and that the acts and the intents were brought home to the knowledge of the plaintiffs." The direct and plain purport of this language is to require actual knowledge, or actual notice, to be brought home to the persons. All idea of constructive notice would seem to be clearly excluded. It was expressly declared, in the form-

er decision in this court, that where there was evidence of such overt and notorious acts of exclusive adverse possession and entire ownership of such a nature that the law will presume them to be notice by persons of ordinary diligence in attending to their own interests—or, in other words, are of such a character as of themselves to impart information and give notice of such adverse possession and ownership even to tenants in common—proof of actual knowledge, or positive notice, was unnecessary and should not be required; and it was said that "if the co-tenant is ignorant of his rights, or neglects them, he must bear the consequences." The distinction between actual and constructive notice in these cases was thus distinctly pointed out.

It is true, the words "brought home to the knowledge or notice of the others" are used by Mr. Justice Story in Clymer v. Dawkins, 3 How. U. S. 689; but it is sufficiently clear from the rest of the opinion that he contemplated not only actual knowledge or notice, but constructive notice also, consisting in overt and notorious acts of ouster, or an assertion of claim to the exclusive possession and the entirety of the whole land "which, in contemplation of law, is known to the other tenants." The same purport is implied in the words of Marshall, C. J., in McClung v. Ross, 5 Wheat. 124, that "a silent possession, accompanied with no act which can amount to an ouster, or give notice to his co-tenant that his possession is adverse, ought not, we think, to be construed into an adverse possession." It is here supposed that acts of ouster may be such as to amount to notice, and in contemplation of law to give notice whether actual knowledge of them be brought home to the co-tenants or not. Such acts are "constructive notice of a claim adverse" to the other tenants in common, and such notorious adverse possession is considered to be "constructive ouster."—Parker v. Locks & Canals, &c., 3 Met. 191. It is said in Lodge v. Patterson, 3 Watts, 77, that "there must be a hostile intent, and that intent must be manifested by outward acts of an unequivocal

kind "; but that " to constitute a disseizin, it was never held
to be requisite that notice should be sent to the disseizee, or
that it must be proved he had knowledge of the entry and
ouster committed on his land." Other cases are entirely
consistent with this distinction: Law v. Patterson, 1 Watts
& S. 184; Prescott v. Nevers, 4 Mas. 330. Where the acts
are inconsistent with the presumption of a tenancy in com-
mon, the intent may be found from the overt acts proved in
the case—2 Greenl. Crui. Dig. 393, p. 3. But a mere verbal
declaration made to some third person would not be such an
overt and notorious act, nor would such act of itself impart
notice. On this matter of knowledge or notice we think the
instructions given for the plaintiffs were clearly erroneous.

Nor do we find that any other instruction was given which
could have the effect to cure this error, or guard the jury
against a misconception of the law on this vital point. The
instruction which was given for the defendants also required
actual knowledge to be brought home to the co-tenants.

We do not well see how the sixth instruction refused for
the defendants, on this subject of knowledge or notice, could
have been refused, even on the theory adopted by the court
in the plaintiffs' instructions, unless it were deemed unneces-
sary, after the jury had already been instructed on that point,
that it required actual knowledge; and we think that con-
structive notice, consisting in a notorious adverse possession,
accompanied with unequivocal acts of exclusive ownership,
would have been sufficient.

It is not considered worth while to examine in detail the
numerous instructions which were refused for the defend-
ants. They do not appear to have been framed with any
distinct reference to the different modes of proving an actual
ouster, which we have indicated above; and many of them
lay undue stress upon particular facts and parts of the evi-
dence. Hardly one of them can be said to be entirely free
from objection. We shall not undertake further to point out
the specific defects. By the light of the principles above laid

down, and with reference to the views expressed concerning the tendency and effect of the different kinds of evidence, counsel will be enabled to frame other instructions which may be better adapted to the nature of the case made before the jury.

Judgment reversed, and the cause remanded. The other judges concur.