Johnson vs. Givens, &c.

CASE 24—PETITION EQUITY—JUNE 27.

# Johnson vs. Givens, &c.

APPEAL FROM UNION EQUITY AND CRIMINAL COURT.

Pending a suit in chancery for the distribution of the estate of an intestate, in which the administratrix and her sureties were defendants, two of the four distribtees, in consideration of $1,000 paid them, covenanted to and with one of the three sureties of the insolvent administratix to indemnify and save him harmless in his suretyship. One of the other two sureties was a non-resident, and had no property in this State. The third surety was ignorant of the contract of indemnity until after the decree was rendered in favor of the four distributees for $300 each—no credit having been allowed on account of the sum paid the two distributees in consideration of the indemnity. *Held*—that, although the bond of indemnity did not operate as a release to the sureties, nor entitle the administratix and her sureties to a credit for the $1,000, yet the resident surety who was not indemnified might obtain a perpetual injunction against the obligors in the bond of indemnity to prevent the collection of that part of the decree to which they are entitled, being one-half thereof, the remaining half to be paid by said surety.

BEN. T. CISSELL, for appellant.

L. HORD, for appellees, cited 2 *Dana*, 107.

CHIEF JUSTICE SIMPSON DELIVERED THE OPINION OF THE COURT:

Elizabeth Martin qualified as the administratrix of her husband, Hudson Martin, deceased, and gave George Johnson, the appellant, Joseph Crawford, and Irvine Price, as sureties in her bond as administratrix.

Hudson Martin left four children, viz : three daughters and one son. One of the daughters married Thomas R. Givens, and another one of them married Samuel A. Davis.

In a suit in chancery, in which the administratix and her sureties, and the four children, together with the husbands of the married daughters, were all parties, a decree was rendered against the administratrix and her sureties, in favor of Thomas R. Givens and wife for three hundred dollars, and in favor of Samuel A. Davis and wife for three hundred dollars, and also in favor of each of the other two children for the same amount, making, altogether, the sum of twelve hundred dollars.

During the pendency of that suit Irvine Price, one of the sureties in the bond, not knowing the extent of his liability as surety, and wishing to "free himself of all future trouble, litigation, and responsibility about the same," paid to Givens and Davis, the husbands of the two married daughters, the sum of one thousand dollars, who, in consideration thereof, bound themselves, with Abner Davis as their surety, by a written instrument "to indemnify and save harmless said Price in his said securityship in said bond in all and every liability growing out of the same, either directly or collaterally, in any manner or way whatever," and further, that they would "pay and satisfy and discharge all sums of money or property that might be decreed in said suit, that said Price, by the terms thereof, might be bound by law to pay" as surety for said administratrix.

Four executions having been issued on the aforesaid decree, for the sum of three hundred dollars each, and placed in the hands of the sheriff for collection, George Johnson, one of the sureties of the administratrix, brought this action, and alleged, in his petition, that the administratrix was insolvent; that Joseph Crawford, one of the sureties was a non-resident, and had no property in this State; that he was wholly ignorant, until after the decree was rendered, of the contract which Irvine Price, the other surety, had made with Givens and Davis; that no credit had been allowed on account of the one thousand dollars which said Irvine Price had paid them, and he set up and relied upon that payment, and the instrument of writing which they executed, as exonerating him from the payment of said decree.

The execution of the instrument, and the payment of the money, were admitted. The legal effect of the writing wa the only question in the case. The court below decided that it did not entitle the plaintiff to any relief, and dismissed his petition. From that decision he has appealed to this court.

The writing relied upon does not purport to be a release, nor could the parties thereto have released the liability that had been incurred by the sureties of the administratrix. They

might have released that liability to the extent of their own claim, but they had no power to release the demand which the other distributees had against the administratrix and her sureties. They did not, however, undertake to release any part of the liability—they only bound themselves to indemnify Price, by paying all sums of money that might be decreed against him as surety.

The sum of one thousand dollars was neither paid nor received as part of the estate to which the distributees were entitled. It was paid by Price as the consideration of the agreement by Givens and Davis, to indemnify him against his liability as surety aforesaid. The administratrix and her sureties were not therefore entitled to a credit for that payment.

Two questions arise on the instrument of writing which was executed by Givens and Davis. *First*, what liability does it impose upon them; and, in the *second* place, can Johnson, the other surety, derive any benefit from it in this action.

According to the literal import of the undertaking, Givens and Davis were to pay all sums of money that might be decreed against Price as surety for said administratrix, and were therefore bound to pay the whole amount of the decree, inasmuch as he was liable as surety for all of it. But it is manifest from the whole instrument, when all its provisions, and the object the parties had in view, are considered, that they were only bound to pay that part thereof for which he would be ultimately liable as one of the sureties. The payment of that part would have the effect to indemnify him, and that was all that they bound themselves to do. As the administratrix was insolvent, and one of the sureties was a non-resident, and beyond the jurisdiction of the court, the whole liability devolved by law on the other two sureties; and the payment of one-half of the full amount of the decree was necessary for Price's indemnity. The obligors in the bond of indemnity were, according to its stipulations, bound to pay one-half of the twelve hundred dollars decreed against the administratrix and her sureties, being just that part of the decree to which they were entitled, in right of their wives, and the payment of which was, by the terms of the decree, to be made to them.

The next inquiry is, can the other surety rely upon this matter in this action, to prevent the collection of that part of the decree to which the obligors in the bond of indemnity are entitled? If the latter were to attempt to enforce the collection of the money decreed to them against Price, he could successfully resist it, on the equitable ground that as the money was going to them, and it was their duty to pay it, they had no right to collect it. And as the decree is a joint one against both the sureties, this equity may be set up and relied on by either of them. If the indemnity had been provided by their principal, then it would have enured to the benefit of all the sureties. But as it was obtained by one of the sureties, with his own means, and for his own exclusive benefit, the other surety can derive no benefit from it, except to exempt him from liability for that part of the decree for which his co-security would be responsible. This action is not brought to compel the obligors to pay money according to the stipulations contained in their bond, but to prevent them from collecting money to which, in equity, they are not entitled. If the object of the action was to compel them to pay the money to which the other distributees are entitled under the decree, a different question altogether would be then presented. The question now is, shall they themselves be permitted to collect money from the sureties, which it is their duty to pay, or are they precluded in equity from collecting it, inasmuch as they have it in their own hands? There is no difficulty in the solution of this question. They have no right whatever to the money, and should not be permitted to collect it. The parties are all before the court, and if, as a court of equity might do, it were to undertake to apportion the liability between the sureties, one of the sureties would be required to pay one-half of the decree, and the other one the other half. Price's half thereof has been already paid, and the money is in the hands of the parties who are entitled to it, and therefore the court would render no decree against him, but would perpetually enjoin those parties from proceeding to enforce the collection of the decree in their favor. The other half thereof, Johnson, the other surety, would be required to pay, and that would be the extent of his liability. Thus the whole

equity of the case would be attained, and complete justice done to all the parties, and such ought to be the judgment in this action. There is no propriety or utility in permitting one of the sureties to be compelled to pay the whole amount of the decree, and thus forced to seek for contribution from his cosecurity, who would then have to seek redress on the bond of indemnity, thereby producing an unnecessary circuity of action.

No question is made in this case as to the equitable right of the wives to the money in controversy, but as the case is presented the husbands have a right to collect it, and it has therefore been considered and treated as belonging to them.

Wherefore, the judgment is reversed, and cause remanded, that a judgment may be rendered, making the injunction perpetual to so much of the decree as is in favor of Givens and wife, and Davis and wife, and dissolving it as to the residue only.