ANNJANETTE LOWD vs. GEORGE W. BRIGHAM.

Middlesex.　January 23, 1891. — February 27, 1891.

Present: FIELD, C. J., W. ALLEN, C. ALLEN, HOLMES, & MORTON, JJ.

Middlesex.　March 9, 1891. — June 25, 1891.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & LATHROP, JJ.

*Partition — Interlocutory Finding — Practice — Exception — Delivery of Deed — Adverse Possession.*

Exceptions taken and allowed in the Superior Court in partition proceedings which result in an interlocutory finding for the petitioner, may thereupon, before further proceedings are had in that court, be entered and heard in this court, if justice requires that it should be done.

At the trial of a petition for partition, on the issue of the delivery of a deed relied on by the petitioner and executed apparently in due form, there was evidence that the grantee had a bond for a deed from the grantor; that an attesting witness thereto, who certified that it was signed, sealed, and delivered in his presence, prepared the deed and saw it signed, and had no further recollection of the matter; that soon after the grantee's death the deed was seen in the possession of his widow, who lived in the house with him; and that a paper signed by the respondent, dated ten days after the grantee's death, referred to the deed as then existing. The respondent, though a witness, gave no explanation of this paper. *Held*, that it could not be said, as matter of law, that there was not sufficient evidence of the delivery of the deed.

The respondent, who relied on a title by adverse possession, testified that his father, the grantee in the deed, gave him the land; that he erected a building thereon, received the rent, and occupied the same adversely; and that a bill of sale of the building, signed by him and found with the deed after the grantee's death, never took effect. There was also evidence that the respondent had recently said that he did not own the land in dispute, but only the building. *Held*, that the evidence did not show, as matter of law, that a title had been gained by adverse possession.

PETITION for partition of a parcel of land in Marlborough, originally filed and amended in the Probate Court, and thence removed to the Superior Court under the Pub. Sts. c. 178, § 46, alleging that the estate could not be advantageously divided, and praying that commissioners be appointed to make partition thereof by a sale and conveyance, and to pay over the proceeds of the sale in such manner as to make the partition just and equal. At the trial in the Superior Court, without a jury, *Hammond*, J. found that "the petitioner is entitled to have

partition as prayed for in her amended petition as to all the land described in said amended petition"; and the respondent alleged exceptions to certain rulings and refusals to rule by the judge. These exceptions were examined and allowed by the presiding judge, and were duly entered upon the docket of the full court for argument.

The case was submitted on briefs, in January, 1891, upon the question whether the exceptions had not been entered prematurely.

*E. F. Johnson*, for the petitioner.

*T. G. Kent & G. T. Dewey*, for the respondent.

FIELD, C. J. This is a petition for partition, originally brought in the Probate Court, from which it was removed to the Superior Court, pursuant to the Pub. Sts. c. 178, § 46. The petition was tried in the Superior Court before a judge, without a jury, and the court found that "the petitioner is entitled to have partition as prayed for in her amended petition as to all the land described in said amended petition." Exceptions were taken to the rulings of the court at the trial, which have been allowed. These exceptions were entered upon the docket of the full court, and the question arose whether they had not been prematurely entered, and, at the suggestion of the court, this question has been argued by counsel. The finding in this case is interlocutory, and it does not appear that the interlocutory judgment has been entered; Pub. Sts. c. 178, § 19; but there seems to be no reason why this should not be done, unless the pendency of these exceptions is a reason. It is alleged in the petition that the real estate cannot be advantageously divided, and the prayer is that the commissioners to be appointed may make sale and conveyance of it, and may distribute and pay over the proceeds in such manner as to make the partition just and equal. Pub. Sts. c. 178, § 65. The petitioner contends that, if these exceptions cannot be entered and heard until after commissioners have been appointed, and they have made partition by sale and have made their report, and this report has been confirmed by the court, injustice will be done; not only because, if the exceptions are sustained, all the proceedings of the commissioners will be void, but because the commissioners cannot properly make sale of the real estate, if it is found that it cannot be

advantageously divided, unless they can make a good title, and it cannot be known whether they can make a good title until after these exceptions have been heard and determined.

The statutory provisions relating to exceptions are the Pub. Sts. c. 153, §§ 8–15. Section 15 provides that the papers relating to a question of law arising upon appeal, by bill of exceptions, reserved case, or otherwise, shall be prepared by the clerk of the court, and shall thereupon "be transmitted to and entered in the law docket of the Supreme Judicial Court for the proper county as soon as may be after such question of law is reserved and duly made a matter of record in the court where the action is pending; but the entry thereof shall not transfer the case, but only the question to be determined."

In *Boyce* v. *Wheeler*, 133 Mass. 554, it is said in the opinion : " The rule of law is well settled that, in cases pending in the Superior Court, questions of law arising therein cannot be entered and heard in this court, upon appeal or exceptions, until after final judgment in the Superior Court. Until such final judgment, this court has no jurisdiction to hear and determine the questions of law." It is plain, however, that this statement is not literally true. In the great majority of cases in which exceptions are taken in the Superior Court, they are heard by this court before final judgment has been entered in the Superior Court. Where exceptions are taken at the trial of questions of fact, the statutes provide that no judgment shall be entered, " unless the exceptions are adjudged immaterial, frivolous, or intended for delay." Pub. Sts. c. 153, § 11. See Pub. Sts. c. 150, § 15. The meaning of the clause cited from the opinion in *Boyce* v. *Wheeler* is shown by subsequent clauses in the same opinion. It is there said: " There has been no final judgment in the case, and it is not ripe for a final judgment. . . . The decision of the court to which exception was taken was an interlocutory decision, and therefore the exceptions in this case have been prematurely entered in this court." This court has uniformly held that exceptions to interlocutory rulings or orders cannot be entered and heard in this court, when, by subsequent proceedings in the case in the court where it is pending according to the regular course of proceedings, the exceptions may become immaterial. A party may seem to be aggrieved by an

interlocutory ruling, and yet, as the cause proceeds to a conclusion, he may in the court where it is pending prevail to the full extent of his claim, and it would be useless for this court to hear and decide exceptions before it appeared that the excepting party had been injured by the rulings' excepted to, if they were erroneous. This, we think, is the foundation of the rule, that exceptions taken in interlocutory proceedings cannot be entered in this court until the case is either finally disposed of in the court in which it is pending, or is in a condition to be finally disposed of there, if the exceptions are overruled. *Safford* v. *Knight*, 117 Mass. 281, and cases cited. *Boyce* v. *Wheeler*, 133 Mass. 554, and cases there cited. *Elliot* v. *Elliot*, 133 Mass. 555. *Comins* v. *Turner's Falls Co.* 140 Mass. 146.

In *Bennett* v. *Clemence*, 3 Allen, 431, the plaintiff demurred to the defendant's answer, and the court sustained the demurrer as to a part of the answer, and overruled it as to the residue; the plaintiff appealed from this decision, and, no further proceedings having been had, he entered his appeal in the full court, and contended that he had a right to have it heard and decided. The appeal was dismissed. It is said in the opinion, that "the provisions of the General Statutes are not very explicit on this subject," but that § 12 of the Gen. Sts. c. 115, "implies that the case is to be finished in the Superior Court before the questions are transferred to this court; for no provision is made that the trial shall be suspended and the case continued there, until the interlocutory question can be argued and determined here." The case arose under the General Statutes, and before the St. of 1864, c. 111. Under the General Statutes, as now under the Public Statutes, the case was not transferred, but only the question of law to be determined; Gen. Sts. c. 115, § 12; and when exceptions were taken and entered after verdict in the Superior Court, it was within the power of that court to set aside the verdict and proceed with the trial *de novo*, although the exceptions were pending before the full court. Whatever distinction there may be between the statutes relating to appeals and those relating to exceptions, the real ground of the decision in *Bennett* v. *Clemence*, we think, is expressed in the last paragraph of the opinion. See *Piper* v. *Willard*, 6 Pick. 461; *Commonwealth* v. *Sallen*, 11 Gray, 52; *Bursley* v. *Barnstable*, 14 Gray, 106; *Commonwealth* v. *McCormack*, 126 Mass. 258.

There is certainly nothing in the existing statutes indicating that exceptions may not always be entered in the full court as soon as may be after they are allowed, but the general practice has become settled not to allow exceptions to be entered and heard until the case is, according to the regular course of procedure, ripe for final judgment in the court where it is pending. This does not, however, prevent the court in which the case is pending, after exceptions have been taken and entered, or even after a rescript has been sent down overruling the exceptions, from setting aside the verdict, discharging agreed facts, or allowing an amendment changing the case from an action at law to a suit in equity. *Terry* v. *Brightman,* 133 Mass. 536. This rule of practice certainly has been carried very far. The decisions which most nearly resemble the case at bar are *Elliot* v. *Elliot,* 133 Mass. 555, where an appeal was taken ; and *Marshall* v. *Merritt,* 13 Allen, 274, *Crompton Carpet Co.* v. *Worcester,* 119 Mass. 375, and *Comins* v. *Turner's Falls Co.* 140 Mass. 146, where exceptions were taken. Still there is no decided case exactly like the present.

The judgment that partition be made is a separate judgment from that rendered on the report of the commissioners, and there is a provision in the statutes for separate appeals from these judgments, and that in an appeal from the judgment on the report the judgment awarding partition shall not be drawn in question. Pub. Sts. c. 178, § 33. It is hardly conceivable that any proceedings that may be taken in regular course in the present case will render these exceptions immaterial, and a sale of the real estate would be impracticable before it was finally established that partition be made. On the alleged facts of this case we think that the reason of the rule of practice which has been adopted in great part fails, and that it is within the discretion of this court to permit these exceptions to be entered and heard, and that justice requires that this should be done. In *Aldrich* v. *Husband,* 131 Mass. 480, questions of law arising at the trial of a petition for partition were reported and heard, without waiting for the report of commissioners, but the question considered in the present case was not raised.

The order is, that the

*Exceptions stand for hearing.*

The bill of exceptions was, in substance, as follows. The petitioner and the respondent, who were brother and sister, were two of the heirs at law of Ashbel Brigham. The respondent claimed to be the sole owner of a portion of the premises in question, with certain buildings standing thereon. The petitioner relied on an alleged deed of the premises, purporting to be executed by one Phelps to Ashbel, three days before the latter's death.

The deed purported to be witnessed by one Dockray, a lawyer, above whose name were the words, " Signed, sealed, and delivered in presence of." Dockray was not present at the trial, but it was admitted that, if present, he would testify that the deed was in his handwriting, but that he had no other or further recollection of the matter, and that he saw Phelps sign the deed.

There was evidence that, prior to his death, Ashbel had a bond for a deed of the property from Phelps, and that within two months of the death of Ashbel the deed was seen in the possession of his widow, who lived in the dwelling-house on the premises occupied by Ashbel at the time of his decease. The petitioner introduced in evidence an instrument in writing, signed by the respondent, and dated October 21, 1861, which referred to said Phelps deed as existing at that time. Charles Brigham, another son of Ashbel, testified that, during the week before his father died, he had the entire care of him and was constantly with him; that during that time he did not see either Phelps or Dockray with his father or about the premises; and that he heard nothing about the making or delivery of the Phelps deed.

The respondent asked the judge to rule that there was not in law sufficient evidence of a delivery of the Phelps deed to warrant a finding for the petitioner in this petition. The judge refused so to rule, and the respondent excepted.

The respondent testified that in 1854 or 1855, when he was twenty-one years old, his father, to induce him to remain at home, offered to give him the land in question, on which he might erect a shop and go into the shoe business; that he accepted the offer, built a shop on the land, and occupied it for two or three years; that he then changed the building into a

dwelling-house, and let the property up to the time of his father's death, and received all the rent; and that after the decease of his father he continued to occupy the dwelling-house erected by him, and the land under the same, taking all the rent up to 1887, under the same claim of right as before his father's death, and that he occupied said premises adversely and under a claim of right. It was in evidence that an instrument, of which the following is a copy, signed by the respondent, was found with the Phelps deed: "Marlborough, June 12, 1856. Ashbel Brigham bought of G. W. Brigham one house situated on his land subject to a mortgage of $200 running to Geo. Brigham 2d, price $400. Geo. W. Brigham."

The respondent further testified, that this writing was never delivered by him to his father, and his father never paid him the $400, or any part thereof; that he made the writing at a time when he was connected in business with his uncle, and there was some danger of a failure; and that he left it in his desk, where both he and his father kept papers.

The petitioner offered in evidence the testimony of Charles Brigham and two sisters, all heirs at law of Ashbel, that within two or three years, and after the death of the widow, in a conversation with the respondent, he stated that he did not own the land in dispute, but only the building, and that he would pay the heirs a certain rent for the land.

After the evidence was closed, the respondent insisted, and asked the judge to rule as matter of law, that there was not evidence in the case sufficient to warrant the court in finding that the petitioner had made out her case for partition, and that as to the premises in dispute there should be judgment for him. The judge refused so to rule, and found for the petitioner as to all the land; and the respondent alleged exceptions.

The case was submitted on briefs, on the questions of law arising upon the exceptions, in March, 1891, by the same counsel.

ALLEN, J. The evidence of the delivery of the deed to Ashbel Brigham was sufficient to warrant a finding that it was delivered. The grantee had a bond for a deed from the grantor. The execution of the deed was apparently in due form, an attesting witness certifying that it was signed, sealed, and delivered

in his presence. It was admitted that this witness, who was a lawyer, would testify, if present at the time, that he prepared the deed, and saw it signed, and had no further recollection in the matter. This was some evidence of delivery. *Brabrook* v. *Boston Five Cents Savings Bank*, 104 Mass. 228, 232. *Howe* v. *Howe*, 99 Mass. 88. *Moore* v. *Hazelton*, 9 Allen, 102. In addition to the above, there was evidence that soon after the grantee's death the deed was seen in the possession of his widow, who lived in the house with him. Moreover, a paper signed by the respondent, dated ten days after the grantee's death, referred to the deed as then existing. The respondent, though a witness, gave no explanation of this paper. Under these circumstances, it could not be ruled in favor of the respondent that there was not in law sufficient evidence of a delivery of the deed.

The testimony of Charles Brigham, tending to show that there could not have been an actual personal delivery of the deed to the grantee by the grantor or his lawyer at or after its date, might not be accepted as literally accurate, but even if so accepted, it did not show that there could not have been a valid delivery to the grantee, either directly by the grantor, or through some one else, or a delivery to some one authorized to receive it for the grantee.

The evidence of adverse possession did not necessarily require the court to find that a title was thereby established in the respondent. He testified virtually that his father, who was the grantee in the deed above referred to, gave the land to him, and that he built a shop thereon, which he changed into a dwelling-house, and received the rent thereof, and that he occupied the same adversely. On the other hand, a paper in the form of a bill of sale of the house to his father, signed by the respondent, was found, and three witnesses testified that the respondent had recently said that he did not own the land in dispute, but only the building. In view of this evidence, the court might well find his claim of title to the land by adverse possession not established, notwithstanding his explanations. Certainly it was not necessary to find in favor of such title.

*Exceptions overruled.*