# Ashford *et al. v.* Ashford *et al.*

### *Statutory Action of Ejectment.*

1. *Adverse possession; nature of.*—Although adverse possession of land is always wrongful until its long continuance has ripened title in the disseizor; yet, whether a wrongful possession is adverse depends, among other considerations, upon the character of the claim under which it is held; it must be hostile to the whole world, under claim of right against all persons, and not in subserviency to or recognition of the title of the true owner.

2. *Same, as between administrator and heir.*—Where an administrator takes possession of and holds lands of his decedent, in his representative capacity, under the assumption that in that capacity he has the right and power to take and hold them, but has not that authority in fact, his possession is not adverse to the heirs, and can never become adverse to them so long as he claims to hold the lands in his representative capacity.

3. *Same; knowledge by heir of adverse holding.*—Where one has taken possession of and holds lands of a deceased person as his administrator, and afterwards claims to hold in his individual right, such repudiation would not operate to give an adverse character to his possession, as against the heirs,

[Ashford *et al.* v. Ashford *et al.*]

unless and until knowledge of such repudiation has been brought home to them.

4. *Same; husband and wife; administrator and heir.*—Where one has taken possession of land as administrator, and while in possession under that claim of right he passed the possession over to his wife, but continued to reside on the land as before, without any visible marks of a change of possession to his wife and without any repudiation by him of the original character of his possession brought to the knowledge of the heirs, they would still be entitled to recover against him and those claiming under her, however long her possession may have continued.

5. *Ejectment; evidence; adverse possession; taking possession as administrator; petition to sell lands.*—In an action of ejectment between heirs of a former owner of the land and the administrator and those claiming under the administrator's wife, evidence is admissible that the administrator took possession as administrator and so held it at the time his wife's possession began; and in this connection a petition by the administrator for an order to sell the land for division among the heirs, and the orders and proceedings thereon, are admissible.

6. *Adverse possession as between tenants in common.*—The possession of one tenant in common is *prima facie* the possession of all, and it does not become adverse to the co-tenants unless they are actually ousted, or unless the adverse character of the possession is actually known to them, or unless the possession is so open and notorious in its hostility and exclusiveness as to put them on notice of its adverse character.

7. *Same; evidence; notice to co-tenants of change in character of possession.*—Where plaintiffs claimed land as heirs, and defendants claimed under one who had entered as a co-tenant and the character of whose possession (it was claimed) had been changed and become adverse to her co-tenants, it was competent for plaintiffs to prove, in rebuttal of evidence tending to show notice to them of the change in the character of the possession, that during all the time of the alleged adverse possession by the co-tenant, her husband living on the land with her, gave in the land for taxes and paid the taxes thereon as the land of plaintiff's ancestor, that he did this as administrator, and that even after his wife's death he held himself out to plaintiffs as being in possession of the land as such administrator.

[Ashford *et al.* v. Ashford *et al.*]

8. *Evidence; statement of conclusion.*—A statement by a witness that F. knew that A. was in possession of the land sued for, claiming it as her own, is a statement of a conclusion of fact and is not admissible in evidence.

9. *Appeal; assignments of error, form of; review.*—An assignment of error that "The court erred in giving charges numbered from 20 to 45," is too general to bring under review the several charges, and will not avail unless each of said charges should have been refused.

APPEAL from the Circuit Court of Lawrence.

Tried before the Hon. OSCEOLA KYLE.

This was a statutory action in the nature of ejectment brought by T. T. Ashford and others against A. E. Ashford and others. The defendants pleaded the general issue and adverse possession. All the parties claimed title from one Thomas Ashford who at the time of his death owned the land sued for. T. T. Ashford was the grandson and the other plaintiffs were great-grandchildren of Thomas Ashford. A. E. Ashford, one of the defendants, was a son of Thomas Ashford, and was administrator of his estate. A. E. Ashford, after his father's death and while he was in possession of said land, married Carrie T. Ashford, who was the devisor of the other defendants in the case. After the purchase by E. C. Ashford of A. E. Ashford's interest in the land at the execution sale, E. C. Ashford transferred and assigned to Carrie T. Ashford the sheriff's deed by endorsement as as follows: "For and in consideration of $1000.00, one thousand dollars, to me in hand paid, I hereby transfer the within deed to Carrie T. Ashford to have, hold and forever possess. March 17, 1875. [Signed] E. C. Ashford." The other facts are sufficiently shown by the opinion.

From a judgment entered upon verdict for the defendants the plaintiffs appeal, assigning as error the several rulings noted in the opinion.

D. A. GRAYSON, for appellants.—A. E. Ashford was entitled to possession of the land as administrator.—*Golding v. Golding*, 24 Ala. 129.

His possesion is to be referred to his representative capacity.—*Betz v. Mullins,* 62 Ala. 368.

He could not be heard to deny the title of the estate of Thomas Ashford, deceased.—*Potts v. Coleman,* 67 Ala. 228; *Irby v. Ketchall,* 42 Ala. 447; 7 Am. & Eng. Ency. of Law, (1st ed.), 28; *Colburn v. Broughton,* 9 Ala. 35; *Chiles v. Gallaher,* 67 Miss. 413.

As to adverse possession between tenants in common, see *Burrows v. Meadows,* 90 Ala. 140; *King v. Paulk,* 85 Ala. 186; *Strouse v. Leipf,* 101 Ala. 431; *McCarthy v. McCarthy,* 74 Ala. 546; 27 Am. & Eng. Ency. of Law, pp. 100-105.

As to continuing trusts, see *Werborn v. Austin,* 82 Ala. 500; *Whetstone v. Whetstone,* 75 Ala. 495.

Evidence was admissible as to payment of taxes by the administrator.—*Wills v. Sheerer,* 78 Ala. 147; *Lucas v. Daniels,* 34 Ala. 188; *Jay v. Stein,* 49 Ala. 514; *Steel v. Knowles,* 97 Ala. 580.

KIRK, CARMICHAEL & RATHER, *contra.*—The letters of administration, petition to sell the land, and orders thereon, were not admissible to show that A. E. Ashford was in possession as administrator.—*Lee v. Downey,* 68 Ala. 98; *Bell v. Craig,* 52 Ala. 215; *Nelson v. Murfee,* 69 Ala. 598; *Ex porte Barker,* 28 So. Rep. 574; *Calhoun v. Fletcher,* 63 Ala. 574; *Tyon v. Brown,* 64 Ala. 244.

All the general oral charge should be construed together.—*Hawkins v. Hudson,* 45 Ala. 482.

One single exception to the refusal of several charges will not avail unless all should have been given.—*Milliken v. Maund,* 110 Ala. 332.

The estate of Thomas Ashford being solvent, the administrator had no right to take possession of the land. *Stovall v. Clay,* 108 Ala. 105; *Lee v. Downey,* 68 Ala. 98.

As to adverse possession between tenants in common and notice thereof, see *Kent v. Kendall,* 82 Ala. 150; 1st Am. & Eng. Ency. of Law, (2d. ed.) , 288-290, 890 note; *Riggs v. Fuder,* 54 Ala. 141; *Newsom v. Snow,* 91 Ala.

[Ashford *et al.* v. Ashford *et al.*]

241; *Bernstein v. Humes*, 75 Ala. 241; *Smith v. Roberts*,
62 Ala. 83; *Bozeman v. Bozeman*, 82 Ala. 389; *Gar-
rett v. Garrett*, 69 Ala. 429; *McArthur v. Carrie*,
32 Ala. 75; *Harris v. Heflin*, 54 Ala. 552; *Dikan
v. Parrish*, 6 Pa. St. 210; 2 Am. & Eng. Ency.
of Law, (2d ed.), 778, note; 47 Am. Dec. 455; *Stipp v.
Cobb*, 28 So. Rep. 404; *Brady v. Hull*, 75 Ala. 80; *Aber-
crombie v. Baldwin*, 15 Ala. 363; *Law v. Patterson*, 1
Watts & Serg. 184.

The twenty years began to run when E. C. Ashford
refused the co-tenants a part of the rents and income of
the land.—87 Ala. 439.

Mrs. Ashford had a good title by adverse possession
when she made the will referring to an undivided inter-
est, and that title was not defeated by that reference in
the will.—2 Am. & Eng. Ency. of Law (2d ed.), 798,
note.

McCLELLAN, C. J.—Adverse possession of land
against the title is always wrongful until its long con-
tinuance has ripened title in the disseizor. But it by
no means follows that every wrongful possession is ad-
verse to the true owner. Whether a wrongful or unau-
thorized possession is adverse depends, among other con-
siderations, upon the character of the *claim* under which
it is held. It must be *hostile* to the whole world. It
must be a claim of right against all persons. It must
not be in subserviency to or in recognition of the title of
the true owner. If there is recognition of the true title,
the possession is not adverse to that title, however
wrongful or unauthorized it may be in every other as-
pect. Thus if A takes possession of the land of B, and
holds it, as and assuming to be the agent of B when he
is not B's agent, or, being the agent of B but without
authority as such to enter upon and hold his principal's
land, his possession, though wrongful and unauthor-
ized, is no more adverse to B than if he were in fact the
latter's agent and duly authorized to take and hold pos-
session for him. So where the administrator of an es-
tate assumes that he has power and authority in that

capacity to take possession of the lands of the decedent and hold them, and does take and hold them under the supposed authority of his office of administrator, though under the particular conditions of the estate he in fact has no such power or authority, his possession, wrongful and unauthorized as it is, is not adverse to the heirs of the decedent since he holds the lands not as his own, but as the lands of the estate, and, of necessary consequence, in clear recognition of the title of the heirs; and his possession can never become adverse to them so long as he claims to hold it in his representative capacity. The inquiry in all such cases is not whether the administrator has a right by virtue of his office to the possession, but whether in point of fact he assumed such right and claimed to hold under it. The validity *vel non* of his claim is immaterial. Its *hostility vel non* to the heirs is the important and controlling issue. Its quality as being or not in denial of the title of the heirs, and not its quality as being or not rightful and authorized, determines whether the possession by him under it is adverse to them. That such a claim is not hostile to but in recognition of the heir's title, and that possession taken and held under it is not adverse to them seems altogether clear. We, therefore, deem it unnecessary to determine in this case whether A. E. Ashford had the right as administrator to take and hold possession of the land sued for. That he did take possession in 1866 immediately after he was appointed administrator is proved beyond controversy. That he has been in possession from that time to the trial of this cause continuously and uninterruptedly, there is at least a tendency of the evidence to show. The jury having a right to find in line with this tendency, a further inquiry of importance to be submitted to them was whether he entered upon and took possession of the premises and has continued to hold them as administrator claiming in that capacity; whether he had any such right or not as administrator. If they found that his claim was based only upon his assumed right as administrator and that his possession under that claim

has continued throughout the years that have passed, that possession could not be adverse to the heirs of his intestate who prosecute this suit, and they should have found for the plaintiffs. If he at any time repudiated this capacity in which he took possession, and afterwards claimed to hold in his individual right, such repudiation would not operate to give an adverse character to his possession unless and until a *knowledge* of such repudiation was brought home to the heirs—not mere notice, but knowledge. Again, if he took possession as administrator, or at any time held possession in that capacity, and while in possession under that claim of right, he actually passed the possession over to his wife, but continued as before to reside on the land and there was no visible marks of any change of possession from him to his wife, and no repudiation by him of the original character of his possession brought to the knowledge of the heirs, they would still be entitled to recover against him and against those now claiming under her, however long such possession of the wife may have continued before suit brought. It was, therefore, competent for the plaintiffs to prove not only against the defendant, A. E. Ashford, but also against the defendants now claiming under his deceased wife, that he took possession as administrator, and that he held possession as such administrator at the alleged inception of the wife's possession. There could scarcely be better evidence that he took possession as administrator, and so held it at the time it is claimed the wife's possession began, than his petition to the probate court for an order to sell the lands for division among the heirs of the intestate and the orders and proceedings had thereon at his instance; and this petition and these orders and proceedings should have been received in evidence not only for the limited purpose for which they were received—to show that he was the administrator—but to show further against all the defendants that the possession was taken and held up to the time his wife is alleged to have been put in possession, as administrator of the estate of plain-

tiffs' ancestor.   The court erred in so limiting the effect of this evidence.

Moreover, the case was tried below on the theory that the defendant's devisor, Mrs. C. T. Ashford, the wife of the defendant, A. E. Ashford, had acquired title to the land in controversy by adverse possession against these plaintiffs.   It was shown that whatever possession she originally acquired was taken under Dr. E. C. Ashford.   He was an heir of Thomas Ashford, deceased, the ancestor of the plaintiffs and of A. E. Ashford.   As such heir he had title to an undivided one-fourth interest in this land. A. E. Ashford had title to the same interest, and the plaintiffs' immediate ancestors had title severally to the other two one-fourth interests. A. E. Ashford's one-fourth interest was sold under execution, and purchased by Dr. E. C. Ashford—nominally at least. The latter then had two undivided one-fourth interests.   He then undertook to convey whatever interest he acquired at execution sale to Mrs. C. T. Ashford, the wife of the defendant in execution. It was then that she entered upon whatever possession she ever acquired from Dr. Ashford and A. E. Ashford, and the other defendants undertake to testify broadly and roundly that Dr. Ashford then put Mrs. C. T. Ashford in possession of the whole property and that thereafter until her death in 1897 she held the possession of the whole adversely to all the world.   We suppose that it was intended by these witnesses to depose that she then took possession of this tract of land in its entirety—all interests in it—and so held it to her death.   But there is, to say the least, abundant evidence in the case to authorize the jury to conclude that even if she did take and hold possession of the whole tract, it was only in her capacity as a tenant in common claiming title only to the one-fourth undivided interest originally owned by A. E. Ashford, sold on execution against him about 1874, purchased by Dr. Ashford and by the latter undertaken to be conveyed to Mrs. C. T. Ashford in 1875. And, indeed, when Mrs. C. T. Ashford more than twenty years after approached her end, she

undertook to dispose of her whole estate by last will, and in that instrument expressly devises as her whole estate in this land an *undivided interest* therein. So that, to put the case most favorably for defendants, it was for the jury to say whether Mrs. C. T. Ashford entered in 1875 as a tenant in common with the plaintiffs, and, if they found that she did so enter, to say further whether her possession as such tenant in common was ever converted into a holding by her adverse to her cotenants, such as would start the running of the statute of limitations or period of prescription against them. Upon this issue a vital inquiry was whether these cotenants ever had any notice of this change in the character of Mrs. Ashford's possession, and in determining this issue of notice *vel non* it was competent for the plaintiffs to prove in rebuttal of the evidence tending to show such notice that throughout all these years A. E. Ashford, living on the land with his wife, the said C. T. Ashford, gave in the land for taxation and paid the taxes upon it as the land of the estate of Thomas Ashford, deceased, that he did this as administrator, and that even after the death of his wife he held himself out to them as being in possession of the land as the administrator of Thomas Ashford's estate. All this was evidence bearing upon the inquiry whether under all the circumstances surrounding and pertaining to the possession of the land from 1866 to the death of Mrs. Ashford the plaintiffs had any notice that her possession had ceased to be in recognition of their common title, and had become adverse to them. If Mrs. Ashford ever did claim in hostility to them—of which we cannot say less than that there is the gravest doubt—there would be more room for concluding that they had notice of it had not A. E. Ashford been himself all along upon the land claiming possession of it as administrator, paying taxes on it as the land of the estate, and in general assuming, rightfully or wrongfully, to represent their undivided interests in the land. Upon another trial, therefore, the letters of A. E. Ashford to Tom Ashford, the fact that he all along gave the property in for taxes and paid taxes upon it as the prop-

erty of the estate, and all his other acts and doings going to show that he was or claimed to be in possession of the land as administrator, should be received in evidence in rebuttal of the claim made that plaintiffs had notice of Mrs. Ashford's possession in hostility to them.

The court erred in allowing the witness A. E. Ashford to testify that "Fred Ashford knew that Carrie T. Ashford was in possession of the land sued for, claiming it as her own." This was a palpable conclusion of fact. The witness could not have absolutely known the fact he thus assumed to depose to at all. His conclusion that it existed was necessarily arrived at by inference from other facts; and it was for the jury, and not for him, to draw whatever deductions in this regard such other facts warranted.

That part of the court's general charge which was in this language: "If when Mrs. Carrie T. Ashford went into possession under the deed from Dr. E. C. Ashford, if she claimed the whole interest in the land sued for, her claim to the whole lands could ripen into a title of advers possession," is faulty in assuming that Dr. Ashford executed *a deed* to Mrs. Ashford. It also has a tendency to mislead the jury to the conclusion that the possession of one tenant in common may be adverse to the title of another without an actual ouster of the other and without a knowledge of an adverse claim of ownership on the part of the tenant in common in possession being brought home to the tenant out of possession. The law is well settled that the possession of one tenant in common is *prima facie* presumed to be the possession of all, and that it does not become adverse to the co-tenants unless they are actually ousted, or, short of this, unless the adverse character of the possession of one is actually known to the others, or the possession of the one is so open and notorious in its hostility and exclusiveness as to put the other tenants on notice of its adverse character.

The following are the assignments of error having reference to the action of the court on request for instructions: "The court erred in refusing to give the charges

requested by plaintiff numbered from 1 to 19." "The court erred in giving charges numbered from 20 to 45." These assignments are too general to bring under review the several charges bearing the stated numbers found in the transcript. The appellants could take nothing by these assignments severally unless each of charges 1 to 19 should have been given, and each of those from 20 to 45 should have been refused, which is not the case. We will, therefore, not consider the special charges given and refused.

Reversed and remanded.