MARY L. JOYCE *vs.* LEWIS DYER & others.

Norfolk.   March 22, 1905. — September 8, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & BRALEY, JJ.

*Partition. Practice, Civil,* Exceptions. *Adverse Possession. Joint Tenants and Tenants in Common. Deed.*

Upon a petition for partition exceptions to a ruling of the presiding judge may be heard by this court although only an interlocutory judgment has been ordered in the court below.

Where one enters land under a deed purporting to convey to him the whole title in fee, and holds it as his own in ignorance of the title of another person owning an undivided share in the land and being thus a tenant in common with him, the possession of him claiming the whole is exclusive, and is adverse to the interest of the tenant in common.

Where one owning an undivided share in certain land sees the land in the exclusive possession of another person who changes a store upon the land into a dwelling house which he and his heirs occupy as a homestead for more than half a century, and where the owner of the undivided share during this period has not questioned the right of the possessor of the land to its exclusive occupation and has asserted no claim to the property in any way whatever, and there is no explanation of his silence, there is an actual disseisin of such tenant in common.

A deed made before St. 1891, c. 354, by one disseised of the land which it purports to convey, and not delivered on the premises, is of no effect.

HAMMOND, J.   This is a petition for partition. After a trial in the Superior Court without a jury, an interlocutory judgment was ordered for the petitioner, and the case is before us on exceptions taken by the respondent Lewis Dyer. The appeal

taken by him is not pressed.  The petitioner contends that since no final judgment has been entered the exceptions should not now be heard, but it has been settled that in a proceeding like this the exceptions may be heard although there has been no final judgment.  *Lowd* v. *Brigham*, 154 Mass. 107.

The record title to the fractional part claimed by the petitioner is in her, and she must therefore prevail unless some reason to the contrary be shown.  The respondent makes two objections: first, that the petitioner's mother was not the legitimate child of Nehemiah T. Dyer, and second, that the record title is lost by long continued disseisin.  The judge found that the petitioner's mother was the legitimate child of Nehemiah T. Dyer, and that there was no actual disseisin.

In the brief of the respondent no argument is made in support of the exceptions so far as they respect the question of the legitimacy of the petitioner's mother, and the point may be dismissed with the simple statement that, in view of the kind of evidence required to bastardize a child born in wedlock, it is manifest that the finding of the judge is amply warranted.  R. L. c. 152, § 22.  *Hemmenway* v. *Towner*, 1 Allen, 209, and cases cited. *Phillips* v. *Allen*, 2 Allen, 453.

The more difficult question is whether the finding that there was no actual disseisin is warranted by the evidence.  Some doubt might at first arise as to the nature of the finding, whether it means that the relation of disseisor and disseisee never existed between the respondent Lewis Dyer and those under whom he claims on the one hand and the holders of the record title on the other, or whether it means that even if such a relation ever existed it never continued long enough to vest a complete title by adverse possession in the disseisor; but inasmuch as various rulings requested by Dyer as to the effect of coverture, or other disability, upon the rights of a disseisee were refused upon the ground that " there had been no actual disseisin " and therefore the rulings were immaterial, the obvious conclusion is that the finding means that the relation of disseisor and disseisee never existed between the respondent Dyer and his predecessors in title and the holders of the record title.  Did the evidence justify such a finding?

There is no material conflict in the evidence upon that point,

and we do not understand either party to contend that the un-contradicted evidence is not to be taken as true. The facts shown were substantially as follows. In 1818, Nehemiah Thayer being seised of the real estate in question died intes-tate, leaving a widow and three children, Sally, wife of Isaac Dyer, Clarissa Sanborn, and Mary, wife of Joseph Dyer. The petitioner claims under this Mary, her great-grandmother. This real estate was set off to the widow of Nehemiah Thayer as a part of her dower, and the daughter Mary was the owner of one undivided third subject to this right of dower. In 1826, Peter Dyer, and Isaac Dyer the husband of Sally, bought the interest of the widow and that of Clarissa, and received deeds of the same. The widow died in 1830. On June 17, 1829, Peter and Isaac Dyer conveyed the whole of the property by warranty deed containing the usual covenants of warranty, seisin, freedom from incumbrances and right to convey. Sally, the wife of Isaac, joined in the testimonium clause " in token of her consent to the bargain, sale and relinquishment of her right, claim," etc., and the deed was acknowledged by all three. It was not re-corded until August 22, 1902. Samuel Dyer, the grantee, en-tered under it, occupied the building on the land as a store about 1835, and about that year changed the store into a dwell-ing house, into which he moved; and " he continued to use and cultivate and live upon the property openly, peaceably, continu-ously and exclusively" from 1835 down to the time of his death, which occurred in 1865.

Samuel Dyer died intestate, leaving several children. To the two sons, Andrew, and Lewis the respondent, the other children in 1867 released their interest in the property, and in the same year Andrew quitclaimed his interest to Lewis. The deeds describe the property as " the real estate formerly owned by our father Samuel Dyer," and were duly recorded in the same year. Lewis is now sixty-seven years old, has always lived on the premises, and has been from 1867 to 1904 continuously in open, peaceable and exclusive occupation of them. It further appears that for more than sixty years before her decease Mary Dyer aforesaid lived near the property in question and was a frequent visitor at the house; that Lewis frequently visited her house, and that this intimacy continued until her decease in February,

1889; that she and her husband Joseph lived together until his death, which occurred about six years before hers; that Joseph was an appraiser in the settlement of Samuel's property and appraised the property as a part of Samuel's estate in 1865; that Lewis never heard that any one made any claim to any part of the property until after the death of Nehemiah T. Dyer in 1892, and no legal proceedings were taken to assert any title thereto until this petition was brought.

Here, then, upon the undisputed facts is an open, peaceable, continuous and exclusive occupation of real estate under a claim of right, and there can be no doubt that in the ordinary case the relation of disseisin as between the occupiers and the owners of the record title would be conclusively shown by such facts.

It is contended, however, by the petitioner that while the deed to Samuel Dyer purported to convey the entire property, yet, even if it be assumed that it operated to convey Sally's interest as well as that formerly owned by Clarissa, two of the daughters of Nehemiah Thayer, still in legal effect it did not convey the interest of Mary, the other daughter, and consequently Samuel became a tenant in common with Mary; and that, under the general rule of law that the possession of one tenant in common, though exclusive, being consistent with the right of the co-tenant, does not amount to a disseisin of the co-tenant in the absence of some act which the law deems equivalent to an ouster, there was no disseisin in this case, or, in other words, that it is not shown that the possession, though exclusive, was adverse to Mary.

The law upon this subject seems to be well settled. As stated by Shaw, C. J. in *Rickard* v. *Rickard*, 13 Pick. 251, 253, "It is in general true, that the seisin and possession of one tenant in common, is to be taken as the seisin and possession of his co-tenant, and the occupation of one will be deemed to be in conformity to his right and title as tenant in common, and not adverse, and consequently that lapse of time will not bar the co-tenant. But this rule is subject to some qualification, and it has long been held, that there may be an actual ouster of one tenant in common, by another, that upon such actual ouster the possession becomes adverse, and if continued for a sufficient length of time the right of the co-tenant out of possession may be barred. It is also now well settled, that a long exclusive and

uninterrupted possession by one, without any possession, or claim for profits by the other, is evidence from which a jury may and ought to infer an actual ouster." The same doctrine is stated by Bigelow, C. J. in *Lefavour* v. *Homan*, 3 Allen, 354, 355. The following part of his statement with reference to the effect of exclusive possession seems particularly pertinent here : " It may however be safely said that a sole and uninterrupted possession and pernancy of the profits by one tenant in common, with the knowledge of the other, continued for a long series of years without any possession or claim of right and without any perception of profits or demand for them by the co-tenant, if unexplained or controlled by any evidence tending to show a reason for such neglect or omission to assert a right, will furnish evidence from which a jury may and ought to infer an actual ouster and adverse possession," citing *Doe* v. *Prosser*, Cowp. 217 ; *Culley* v. *Taylerson*, 11 Ad. & El. 1008 ; *Rickard* v. *Rickard*, 13 Pick. 251 ; and *Parker* v. *Proprietors of Locks & Canals*, 3 Met. 91. In *Bellis* v. *Bellis*, 122 Mass. 414, 415, Morton, J. says : ". . . if, with the knowledge of his co-tenant, he [a tenant in common] enters upon the land under a claim of exclusive right, and maintains his possession to the exclusion of his co-tenant, this will amount to a disseisin, which, if continued for twenty years, will give the disseisor a title by adverse possession."

In considering this question we must bear in mind the familiar principle that when one enters upon land he is presumed to enter under the title which his deed purports upon its face to convey, both as respects the extent of the land and the nature of his interest. The deed to Samuel Dyer purported to convey the fee in the whole. Under that deed he entered, and in the absence of anything shown to the contrary he is presumed to have entered under a claim of right to the fee in the whole. It is not a case where a tenant in common, being or entering into possession as such, afterwards attempts to claim that his occupation was adverse to his co-tenant. Dyer did not enter as a tenant in common. From the very first he is presumed to have claimed under his deed, and there is nothing to show that he or his successors ever acknowledged or ever supposed that the interest thereby conveyed was anything other than as it appeared upon the face of the deed. The evidence conclusively shows that the posses-

sion was not only exclusive, but was adverse to every person, including Mary.

The next question is whether Mary must not be presumed to have known that the possession was adverse. If the deed had been recorded, she would be presumed to have known of it. *Parker* v. *Proprietors of Locks & Canals, ubi supra.* She knew that at the death of her father her co-tenants were her two sisters and no one else. When Samuel Dyer came into possession she knew that he was either a disseisor as to her and her co-tenants, or that he had some sort of deed from them. There was a store upon the land. He changed it from a store to a dwelling house. As tenant in common she may well have challenged his right to make such a radical change in the property. For more than half a century under her own personal observation the house was occupied by him and his heirs as a homestead. She is not shown ever to have made a question as to his right to exclusive occupation or to have asserted any claim to the property in any way whatever, and there is no explanation of her silence. Applying the principles stated in the cases hereinbefore cited to the undisputed facts, it is clear that, as matter of law, the possession of Samuel Dyer and those claiming under him was adverse, and that the finding that there was no actual disseisin is not warranted by the evidence.

It does not appear from the registry of deeds or otherwise that Mary undertook to make any conveyance of her interest until June 2, 1886, on which day she, being then eighty-six years of age and a widow, conveyed by quitclaim deed to her son Nehemiah, the grandfather of the petitioner, "all right and title which I hold". in said property. The deed was made before St. 1891, c. 354, and is not shown to have been delivered upon the premises. As the grantor was then disseised, the deed was inoperative to pass her interest, whatever it might have been. So far, therefore, as the petitioner's claim rests upon this deed she cannot recover. *Sohier* v. *Coffin,* 101 Mass. 179. So far as her claim rests apart from this deed upon her relationship to Mary Dyer, it does not appear how many children Mary Dyer had, and hence it is not shown what the share of the petitioner as her descendant would be.

Inasmuch as the finding that there was no actual disseisin was

not warranted by the evidence we think that in refusing upon that ground to pass upon the rulings requested by the respondent Dyer as to the effect of the statute of limitations, as well as in refusing to give the sixth ruling requested,* there was error.

*Exceptions sustained.*

*C. C. Mellen*, for the respondent Lewis Dyer.

*G. W. Abele*, for the assenting respondent James McSweeney.

*C. G. Swain*, for the petitioner.

---

* The ruling here referred to was one of those refused by the judge on the ground that there had been no actual disseisin. It was as follows: "Sixth. It being settled 'that the disseisin of an heir, devisee or grantee may be tacked to that of an ancestor, devisor or grantor, to create title by adverse possession,' it follows that if Samuel Dyer, the father of Lewis the defendant, had a title by adverse possession in whole or in part, it passed to his heirs of whom Lewis was one, and from the other heirs to him the said Lewis by purchase of their shares."