H. D. HANSON, Trustee of the Estate of James O'Donnell,
v. TERRANCE GALLAGHER, Administrator of the Estate
of Susan Gallagher, Deceased, JOHN GAVIGAN, HUGH
GAVIGAN ET AL., Appellants.

**Real property:** ADVERSE POSSESSION: LIMITATIONS. When the statute
1  of limitations has once commenced to run by adverse possession
it continues to run as long as the possession continues. Thus
where the plaintiff under claim of *right* entered into possession
of land owned by a decedent who left no heirs, except aliens who
could not at that time inherit, his rights were not affected by sub-
sequent statutes permitting aliens to inherit; and such heirs hav-
ing failed to make any claim to the land for more than twenty
years were barred by limitation.

**Same:** CLAIM OF RIGHT: COLOR OF TITLE. An unequivocal claim of
2  right to property, consisting in the assertion of absolute owner-
ship and possession as against the whole world, is a sufficient
basis for the running of the statute of limitations, without color
of title.

**Same.** One taking possession of the real property of a deceased
3  brother, who died leaving alien parents, brothers and sisters, and
brothers residents of this country, did not do so as an heir of
the deceased brother, even though the alien parents were not
entitled to inherit; but such possession was adverse, and when
continued for ten years ripened into title, unaffected by any in-
terest he may have acquired by the death of the parents thereafter.

**Same:** COTENANTS. Although one claiming title by adverse posses-
4  sion may have had an interest in the property as a cotenant still
there may be such acts of possession as to constitute an unquali-
fied assertion of sole and exclusive ownership as to bar the rights
of other cotenants.

**Evidence:** TRANSACTIONS WITH A DECEDENT. A party can not testify
5  to a personal transaction with a decedent although at the time
of the transaction the statute prohibiting the same was not in
force.

**Adverse possession:** RECORD TITLE: PRESUMPTION. Where the owner-
6  ship of property is a matter of record in the county where the

land is situated, one claiming title thereto by adverse possession is not required to prove that other claimants of the property had actual knowledge of such recorded ownership; as the record gives rise to a presumption of such knowledge.

**Same:** LACHES: ESTOPPEL. Those having knowledge that the claimant 7 of land by adverse possession was making valuable improvements, and with such knowledge failed to question his title for more than twenty years, are estopped by their laches from thereafter questioning the same.

*Appeal from Iowa District Court.*—HON. R. P. HOWELL, Judge.

SATURDAY, FEBRUARY 10, 1912.

ACTION to quiet title to an eighty-acre tract of land in Iowa county. There was a decree for plaintiff, and defendants appeal.—*Affirmed.*

*J. M. Dower* and *Wolfe & Wolfe,* for appellants.

*Wade, Dutcher & Davis, Popham & Havner, Yoss & Wallace, J. F. Kirby,* and *R. W. Pugh,* for appellees.

McCLAIN, C. J.—Plaintiff claims title to the land in controversy as trustee under deeds from Cornelius O'Donnell and Hugh O'Donnell, asserting title thereto under deeds from their father, James O'Donnell, who is still living. The deeds to plaintiff were made as the result of settlement of a suit in which the mental capacity of James O'Donnell was called in question. It is conceded that plaintiff, as trustee, has succeeded to the entire title which James O'Donnell at any time had in the premises, and said James O'Donnell will be spoken of in this opinion as the plaintiff.

The action was originally brought against Susan Gallagher, a sister of the plaintiff, John and Hugh Gav-

igan, sons of a deceased sister of plaintiff, and many other alleged claimants of an interest in the land, known and unknown, nonresident aliens whose interests in the land, if any, were derived by descent from the parents of plaintiff, who resided and died in Ireland. During the pendency of the proceedings, Susan Gallagher died, and her son, Terrance Gallagher, as administrator of her estate, was substituted as party defendant.

The nature of the plaintiff's alleged title and of the interests which it is charged are claimed by the defendants will appear from the following brief statement: The plaintiff, James O'Donnell, and his brothers, Patrick and Michael O'Donnell, came to the United States from Ireland, and became residents about 1854; and about that time Patrick acquired title to the land in controversy by entry under the United States land laws and got a certificate showing entry from the proper land office. About 1859 Patrick died, unmarried; his sole relatives in the United States being the plaintiff and his brother, Michael. On the death of Patrick, plaintiff took possession of the land and continued to hold possession thereof until he executed the conveyances to his two sons not long before the institution of this action, as already explained. Prior to 1864 Michael died, unmarried. At the time of the death of Michael, the parents of the three brothers were still living in Ireland, where other brothers and sisters then resided. About 1866 a sister, Susan, who had intermarried with one Gallagher, having previously come to Canada with her husband, removed with him to the neighborhood in which this land was situated, and soon after bought from plaintiff an adjoining tract of land on which she resided until her death pending this action. Subsequently, and prior to 1875, defendants John and Hugh Gavigan, sons of a sister who had died in Ireland, came to the same neighborhood. No other relatives of the plaintiff have ever been residents of the United States. Plaintiff's claim

of exclusive title to the premises in controversy rests on the fact that he took possession of the land soon after the death of its owner, Patrick, procured the issuance of a patent for the land from the United States government on the forwarding of the certificate of entry which had come into his possession about the time of Patrick's death, improved and cultivated the land, paid taxes thereon, and remained in the undisturbed and unquestioned possession thereof as owner until about the time this suit was instituted, as already explained. The claim of the defendants Susan Gallagher (now represented by her son and administrator) and John and Hugh Gavigan is that, as the sole heirs of the parents of Patrick O'Donnell, they are entitled to a two-thirds undivided interest in the land. None of the other defendants made parties by publication of notice appeared in the action.

I.   One of the contentions for appellants is that on the death of Patrick O'Donnell the land in controversy escheated to the state on account of the nonresidence and

1. REAL PROP-
ERTY: adverse
possession:
limitations.

alienage of his parents then living, and that by the enactment of chapters 56 and 193 of the Acts of the Twelfth General Assembly of this state in 1868, which were made retroactive, the title vested in the parents of Patrick O'Donnell and their heirs, and that the plaintiff has since that time been in possession as a cotenant of the other heirs. We think it is immaterial what the effect of the statute may have been, for at the time of its enactment plaintiff was already in possession of the land, asserting and exercising for himself the rights incident to ownership. If the possession prior to the enactment of these statutory provisions was adverse to the claims of all others who might then or afterward claim to hold an interest in the land through Patrick, then this possession has without question remained adverse to the present time, and it has never been attacked until since the institution of this action. When the statute

of limitations commences to run by adverse possession, it continues to run so long as such possession continues. This is the general rule as to statutes of limitation. *Black v. Ross,* 110 Iowa, 112.

II.   It is contended for appellants that, as plaintiff entered into possession of the land without color of right or claim of title, his possession was not such as to set the statute

2. SAME: claim of right: color of title.

of limitations running, and they rely upon cases such as those of *Grube v. Wells,* 34 Iowa, 148; *Litchfield v. Sewell,* 97 Iowa, 247; *Mc-Clenahan v. Stevenson,* 118 Iowa, 106; *Blumer v. Iowa R. Land Co.,* 129 Iowa, 32; *Keller v. Harrison,* 151 Iowa, 320, in which, with reference to various states of fact, it has been said that the claim must be as broad as the possession and hostile as to every other claimant. But under the evidence such was the nature of the claim of the plaintiff. In every way in which a right of ownership and possession as against the whole world could be asserted, such right was asserted by plaintiff. It may be conceded that he had no color of title, but in this state a claim of right— that is, an unequivocal claim—to the property which affords the ground for taking and continuing to hold possession in his own right as against the whole world, is sufficient as a basis for the running of the statute of limitations. *Hamilton v. Wright,* 30 Iowa, 480; *Colvin v. McCune,* 39 Iowa, 502; *Montgomery County v. Severson,* 64 Iowa, 326. "Continuous and uninterrupted possession will not alone establish a claim of right, neither will payment of taxes; but when, with these circumstances, it also appears that the party has set out trees, erected a house and outbuildings, inclosed the premises by fence, cultivated the land, and in all respects treated it precisely as his own, a claim of right may be inferred, and treated as fully established as though shown by oral declarations of such claim." *Wilbur v. C. R. & M. R. R. Co.,* 116 Iowa, 65. There can be no question, under the record, as to the fact that plain-

tiff's acts with reference to the land from the first constituted an unequivocal assertion of his individual and exclusive ownership of the land.

III.    But the principal contention for appellants is that plaintiff's right at the beginning of his possession was only as one of the heirs of his brother Patrick, and was not

3. SAME.

therefore hostile to the claims of his co-heirs, who were tenants in common. The first difficulty with this claim is that when he took possession he was not an heir. It is conceded that had it not been for the alienage and nonresidence of the father and mother, they would have been the lawful heirs of Patrick. So long as the father and mother, or either of them, lived, plaintiff had no interest whatever in his brother's estate as heir, and it is immaterial that they as nonresident aliens were not entitled to inherit. *Furenes v. Mickelson,* 86 Iowa, 508; *Meier v. Lee,* 106 Iowa, 303.

Plaintiff's mother died in Ireland later than the year 1870, and therefore after plaintiff had already been in adverse possesion of the premises for ten years. During that time plaintiff was not in possession as one of the heirs of Patrick, and the nature of his possession from and after the date of his mother's death could not be colored by that fact, even though it should be conceded that from that date onward he would have had some interest in the property as the heir of his mother. He never claimed it nor asserted a right of possession to it by reason of any such assumed interest.

But conceding some interest in appellants such as would entitle them to treat the possession of plaintiff in its inception as that of a tenant in common, there have been

4. SAME:
   cotenants.

such acts of possession by the making of improvements and the receipt of rents and profits notoriously in plaintiff's own right as to constitute an unqualified assertion of sole and exclusive ownership amounting to an ouster which would bar any rights of ap-

pellants as cotenants. *Burns v. Byrne,* 45 Iowa, 285 ; *Casey v. Casey,* 107 Iowa, 192 ; *Blankenhorn v. Lenox,* 123 Iowa, 67 ; *Dobbins v. Dobbins,* 141 N. C. 210 (53 S. E. 870, 10 L. R. A. (N. S.) 185, 115 Am. St. Rep. 682) ; *Joyce v. Dyer,* 189 Mass. 64 (75 N. E. 81, 109 Am. St. Rep. 603) ; *Ashford v. Ashford,* 136 Ala. 631 (34 South. 10, 96 Am. St. Rep. 82) ; *Lapeyre v. Paul,* 47 Mo. 586.

Counsel for appellants rely much upon the case of *Bader v. Dyer,* 106 Iowa, 715, as supporting the proposition that, in the absence of knowledge on the part of appellants that Patrick O' Donnell was ever the owner of the land in controversy, they were not charged with notice that plaintiff's claim was adverse to the interests which they now assert by reason of their relationship to him. But the case is not in point on this proposition, for the question there was as to knowledge that the person claiming by adverse possession had been asserting any right in hostility to those claiming title as tenants in common. The controlling feature of that case was that in the inception of the possession relied upon there was confessedly a tenancy in common, and that there had been no acts of the possessor coming to the knowledge of the other tenants in common or of which they were charged with notice constituting an unequivocal disavowal of a continuance of possession in the common right. In the case before us there is no question as to knowledge of the unqualified assertion of exclusive, individual, and undivided right to the property. The question as to knowledge relates to the fact of the alleged original co-ownership, which is quite a different proposition. As already suggested, there was not, at the beginning of plaintiff's possession, any co-ownership on the part of those under whom appellants now claim title ; but, if there had been, there is nothing to indicate that the original possesion of plaintiff was as co-owner rather than in hostility to those who might have claimed to be co-owners. There is not a scintilla of evidence that when plaintiff took

possession he did so as one of the heirs of his brother Patrick.

With reference to knowledge on the part of those through whom appellants claim title that Patrick O'Donnell was at one time the owner of this land, something further

5. EVIDENCE: transactions with a decedent.

should be said in regard to the condition of the record. Plaintiff was allowed to testify that more than twenty years before the institution of this suit, and before any assertion of interest in the property had been made by appellants or those under whom they claim, he (plaintiff) advised Mrs. Gallagher (on her arrival in Iowa county about 1866) and Mrs. Gavigan (when he saw her in Ireland about 1883) that the land had once been Patrick's and that he had taken possession of it in his own right and for himself. This evidence was objected to on the ground that it related to conversations and transactions with persons who at the time of the trial were deceased, and that therefore it was incompetent under the provisions of Code, section 4604. This objection is no doubt now well taken, although at the time the conversation between plaintiff and Mrs. Gallagher took place there was no such statutory provision.

But excluding entirely this evidence for plaintiff, there is still lacking any evidence whatever that plaintiff concealed from Mrs. Gallagher or Mrs. Gavigan the fact of

6. ADVERSE POSSESSION: record title: presumption.

their brother's original ownership of the property. Such ownership was a matter of record in the county in which the land was situated, and we are not prepared to hold that in order to establish the adverse character of his possession as against the whole world, including those under whom the appellants claim, the burden is upon plaintiff to show that such persons had actual knowledge of their brother Patrick's original ownership. Such knowledge must be presumed, for it was not only a matter of record, but of notoriety. *Laraway v. Larue,* 63 Iowa, 407; *Knowles v. Brown,* 69

Iowa, 11. The very purpose for which the doctrine of adverse possession is recognized is to cut off the claims of those who must for the assertion of their title rely upon facts which it would be unreasonable, on account of the length of time elapsing, to require the claimant to controvert by direct proof.

IV. Much of what has been said in the last preceding division of this opinion is applicable to the question of the laches of appellants and those under whom they claim in making no assertion of right to or interest in the property while plaintiff under his possession and claim of right was improving it and keeping it as his own. Without going into matters of detail appearing from the record, it is sufficient to say that during the period of plaintiff's possession, and in consequence, to some extent at least, of expenses incurred in clearing the land and reducing it to tillable condition and placing upon it permanent improvements, its value has increased from not more than $3 an acre until it is now worth $160 an acre. Under such circumstances, appellants and those through whom they claim, having had knowledge that plaintiff was improving the land and treating it as his own for at least twenty years, are estopped by their failure to raise any question as to his title from now doing so. *Warner v. Hamill,* 134 Iowa, 279; *Horr v. French,* 99 Iowa, 73; *McBride v. Caldwell,* 142 Iowa, 228; *Hawley v. Von Lanken,* 75 Neb. 597 (106 N. W. 456).

7. SAME: laches: estoppel.

Appellants and their ancestors have for many years had knowledge of plaintiff's occupancy and improvement of the land under claim of right. The usual means of ascertaining whether they had any interest in the land have always been available to them during such period of occupancy. During that entire period, and until the bringing of this suit, they have had no thought and have made no suggestion to plaintiff or others that they had any adverse interest. Un-

der these circumstances, the claims now made in their behalf can be given no persuasive force in a court of equity. The decree of the lower court is *affirmed*.